UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAY 30  PM 1: 48

CLERK
BY_____
DEPUTY CLERK

-----------------------------------------------------------------X

DANIEL BANYAI,

                                      Plaintiff,

Case No.

2:23-cv-101

        -against-

TOWN OF PAWLET, JUDGE THOMAS S. DURKIN,
and JOHN AND JANE DOE 1 through 20, whose
identities are unknown at present.

                               Defendants.

-----------------------------------------------------------------X

## VERIFIED COMPLAINT- JURY TRIAL DEMANDED

      Plaintiff, Daniel Banyai, by his attorney, Robert J. Kaplan, Esquire and KAPLAN AND

KAPLAN, for his complaint against Defendants states and alleges as follows:

### PRELIMINARY STATEMENT

      1.     This case involves a novel attempt to infringe on protected constitutional and state

law activity by way of local zoning regulations. The named defendants in this case, at the

encouragement of interested and disinterested persons alike, including members of the media and

government officials hostile to gun rights, unlawfully revoked plaintiff's valid zoning permit to

operate a shooting/training school on his vast 30 acres of rural, undeveloped, wooded property.

The revocation of Plaintiff's permit was significantly influenced by sensationalized, untrue

claims made about Plaintiff and his shooting range, known as "Slate Ridge."

      2.     In opposition to Plaintiff and Slate Ridge, the *Mountain Times* claimed:

"[Plaintiff] and groups of men armed with large guns have confrontational exchanges with local

residents many times over the past four years...Sometimes, neighbors say, they have been



followed or confronted by the armed men." https://mountaintimes.info/militia-training-site-terrifies-neighbors-in-west-pawlet/.

3.       In a story published in *The New York Times*, a neighbor claimed that "the main reason [why the state had not intervened against Plaintiff] was that Vermont's law enforcement bodies, from the town level up to the state, were fearful of an armed confrontation." In the same article, a former Vermont state representative echoed this belief, having compared Plaintiff's zoning dispute with January 6. https://www.nytimes.com/2021/02/23/us/vermont-gun-range-pawlet-zoning.html.

4.       *This American Life*, a public radio show and podcast with a listenership of millions, details how neighbors have strategically placed guns and Kevlar vests around their home in anticipation of an armed confrontation with Plaintiff. https://www.thisamericanlife.org/743/transcript.

5.       Following an injunction against Plaintiff, Governor Phil Scott commented on the case, proclaiming its "good news" that the injunction was approved and its something "we've been advocating for." https://vtdigger.org/2021/01/22/governor-slate-ridge-injunction-is-good-news-for-neighbors/.

6.       These false allegations of "dangerousness" and "violence" lodged against Plaintiff in the media and by cynical politicians culminated in the Vermont legislature passing a bill to ban "paramilitary training camps" which has now been enacted into law. "Slate Ridge has become a problem for a while now," Senate President Pro Tempore Phil Baruth claimed. In support of the bill, Baruth said "We're after that more dangerous, people-focused training with real weapons." https://vtdigger.org/2023/01/09/vermont-senate-leader-introduces-bill-that-would-ban-paramilitary-training-camps/.



Park Plaza · Suite 405
95 St. Paul Street
Burlington, VT 05402
(802) 651-0013

7.    These stories, which typically contained false, misleading, or inaccurate information about Plaintiff and Slate Ridge, were published frequently in order to tarnish Plaintiff's reputation, stir unfounded and irrational fear and anxiety among residents and Vermont officials, and to pressure local government to aggressively intervene against the Plaintiff and Slate Ridge.

8.    Ultimately, the pressure imposed by a coalition of anti-gun activist residents, political actors and other activists worked – Plaintiff's validly issued permit was revoked based on a convoluted and constitutionally defective application of zoning law, which was inexplicably upheld by the Vermont Supreme Court. Defendants, emboldened by media adulation and political support, aggressively sought to prosecute and punish Plaintiff by way of civil enforcement to compel Plaintiff to remove the building and shooting ranges he constructed on his property. However, Defendants' conduct was not limited to just shutting down Slate Ridge. Through the civil enforcement action, Defendants unlawfully sought to force the deconstruction and removal of unrelated farming structures on Plaintiff's property. Far from questioning the significant overreach, abuse of power and egregious interference of private property rights, local residents, the media, and high-ranking government officials, including Governor Phil Scott, encouraged and cheered the violation of Plaintiff's civil rights every step of the way.

9.    As it stands today, not only has Plaintiff been subjected to significant fines, totaling tens of thousands of dollars, but he is now faced with the immediate threat of incarceration should he fail to remove the shooting ranges and other structures existing on his property.



10.    As a result of Defendants actions in this case, Plaintiff's civil rights have been violated, causing significant economic and non-economic damages in the process. This case is

about vindicating those constitutional and state-law rights while seeking recovery for violation of the same.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over all claims alleged herein under 42 U.S.C. §§ 1983 and 1988, and the Constitution of the United States.

12.     Venue properly lies in this Court because it is a judicial district in which the events and omissions giving rise to the claims alleged herein occurred.

**PARTIES**

13.     Plaintiff Daniel Banyai ("Plaintiff") is an individual residing in the State of Vermont, County of Rutland, Town of Pawlet.

14.     Defendant Town of Pawlet (the "Town") is a Vermont municipality located in Rutland County, State of Vermont.

15.     Defendant Judge Thomas S. Durkin ("Judge Durkin") is the presiding judge of the Environmental Division of the Vermont Superior Court located at 32 Cherry Street, Burlington, Vermont 05401.

16.     Defendants John and Jane Doe 1 through 20 are either unknown at present or Plaintiff does not yet have sufficient information to properly plead a cause of action against them, but upon information and belief, they are employees, agents, or associates of the Defendants that witnessed, concealed, facilitated, or otherwise participated in the acts to which Plaintiff was subjected.

**FACTS**

**I.      The 2018 Permit**

17.     On or about July 14, 2013, Plaintiff purchased the property known as 541 Briar



Hill Road, Pawlet, Vermont 05761 (the "Property"). The Property exceeds 30 acres, is extensively wooded, undeveloped, rural land, and is located primarily in the Agriculture Rural Residential district of the Town, just outside of a slate quarry. The Property is landlocked and is accessed through a 30 foot wide right of way across an adjoining parcel.

18.     On or about March 8, 2011, two years before Plaintiff purchased the Property, the Town adopted a new local zoning regulation that required landlocked parcels to have right of way access of at least 50 feet wide to be developed. The Property, with its 30 foot wide right of way, had existed for more than fifteen years before this new zoning regulation was adopted and a permit for development had been previously issued by the Town to a prior owner of the Property.

19.     Plaintiff is a passionate firearms enthusiast who wanted to create a safe, not-for-profit facility dedicated to firearms instruction and training on the Property. In furtherance of this goal, Plaintiff created two outdoor shooting ranges on the Property. The shooting ranges consisted of standalone targets, earthen berms, and one range which contained covered shooting benches and a façade.

20.     In or around 2017, Plaintiff began hosting training and shooting events at the Property under the name "Slate Ridge." Plaintiff did not request or collect money for these events.

21.     Sometime in 2017, Plaintiff undertook preliminary steps to construct a small, one room building that totaled approximately 500 square feet (the "School Building"). Eric Mach, then the Zoning Administrator for the Town of Pawlet ("ZA Mach"), came to the Property to view Plaintiff's construction of the School Building. After speaking with Plaintiff about his intended use for the Property, ZA Mach directed Plaintiff to fill out a zoning application for a "school," an allowed by-right use in the zoning district, to come into compliance with local



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

5

zoning regulations.

22.     At ZA Mach's direction, on or about December 5, 2017, Plaintiff filed a permit application requesting approval for a "school" structure and change of use of property from "land" to "school."

23.     On January 2, 2018, ZA Mach denied Plaintiff's permit application because the Property's 30 foot access right of way did not meet the Town's 50 foot right of way requirement for landlocked parcels adopted in 2011 (the "January 2018 Denial"). The January 2018 Denial was based on a clear error of law. Since the Property's 30 foot right of way existed long prior to the change in law requiring a 50 foot right of way, the Property qualified as a pre-existing non-conforming lot under Vermont statute. Accordingly, ZA Mach did not have authority to deny the Plaintiff's permit for the 30 foot right of way in the first instance.

24.     The January 2018 Denial also did not provide Plaintiff instructions for appeal, nor did it warn Plaintiff that his failure to timely appeal the denial could result in him forever losing his right to exemption from the Town's right of way restriction, or to file a subsequent application for a permit.

25.     In fact, when Plaintiff questioned ZA Mach regarding the January 2018 Denial, ZA Mach did not advise Plaintiff to appeal the denial but instead advised Plaintiff to apply to the Town of Pawlet Development Review Board ("DRB") for a variance from the 30 foot right of way requirement.

26.     Relying on ZA Mach's direction, Plaintiff did not appeal the January 2018 Denial and instead applied for a variance from the right of way requirement. On April 1, 2018, Plaintiff submitted his variance application to the DRB. On April 25, 2018, the DRB held a hearing on Plaintiff's variance application.

27.     At the hearing, Plaintiff's neighbors vigorously opposed Plaintiff's intention to operate a shooting school on his 30 plus acres of property. One of the neighbors told the DRB they are "now scared to use the trails for their horses or have their grandchildren over to visit." Another neighbor appeared on behalf of "a group of 46 signatories of a petition" opposing Plaintiff's variance application on the basis of, among other reasons, "noise pollution" from the use of semiautomatic weapons.

28.     In reality, Plaintiff's operations posed no threat to the safety of nearby residents. The nearest neighboring property is hundreds of yards away from the shooting ranges. Most importantly, the ranges are sunk below ground level, with earthen berms rising up around them forming backstops, thereby preventing and stopping any stray bullets from exiting the ranges. The top of the berms are also surrounded by thickly wooded areas.

29.     Plaintiff was also amenable to restricting shooting range use to normal business days and hours in order to protect neighboring residents and to limit disturbance.

30.     At the conclusion of the hearing, in a unanimous decision, the DRB correctly determined that no variance of the right of way requirement was necessary because the Property qualified as a pre-existing non-conforming lot with its 30 foot right of way. As a result, the DRB did not grant nor deny Plaintiff's variance because it did not have the jurisdiction to consider the application. Instead, the DRB, through its counsel, advised Plaintiff to submit a new application for a permit for the School Building and change in use. The neighbors immediately appealed the DRB's decision relating to the variance application to the Environmental Division.

31.     On May 29, 2018, ZA Mach sent Plaintiff a notice of violation advising Plaintiff that his construction of a building and use of the property without a permit violated the Town of Pawlet zoning regulations ("NOV1"). **Critically, NOV1 explicitly advised Plaintiff that he**



**could submit a permit application within seven days to cure the violation**.

32.    On June 4, 2018, Plaintiff timely submitted a permit application for the School Building and change of land use to "school/training" and paid the required $400.00 zoning fee. **ZA Mach promptly approved the application on the day of submission and issued Plaintiff a permit, thereby curing NOV1**. Accordingly, on June 4, 2018, Plaintiff was issued and possessed a valid permit for the School Building and for use of the Property as a shooting/training school (the "2018 Permit").

33.    A day later, on June 5, 2018, an anonymous letter was submitted to the "Members of the Select Board, ZBA, DRB and Planning Commission" by "concerned citizens of the Pawlet Community" in response to ZA Mach's approval of Plaintiff's application for a permit. In the letter, these unnamed individuals threatened litigation to "[contest] the business use of multiple shooting ranges" and demanded that ZA Mach be immediately removed as the Town's Zoning Administrator.

34.    In reliance on the Zoning Permit issued by the Town's Zoning Administrator, which was never appealed, Plaintiff constructed a five hundred square foot school building for use in Plaintiff's intended firearms training activities.

35.    Seven months after Plaintiff obtained his permit, the Environmental Division issued a decision on the neighbors' appeal of the DRB determination that Plaintiff's property was exempt from the right of way restriction as a prior non-conforming parcel. The Environmental Division ruled, without addressing the June 2018 Permit, that Plaintiff's failure to appeal the January 2018 Denial precluded him from raising the fact that the Property was a pre-existing nonconforming parcel. The Environmental Division remanded the matter to the DRB, directing they consider the merits of the variance but avoid consideration of the Property as a pre-existing

nonconforming use. On remand, based upon the direction of the Environmental Division, the DRB, faced with outrage in the media and some local opposition, predictably denied the variance application.

36.     Plaintiff did not appeal the DRB's variance decision because he then possessed an un-appealed and, therefore, valid permit for all structures and uses of his Property.

37.     After the DRB denied the variance, a new Zoning Administrator, Hal Wilkins ("ZA Wilkins") issued a Notice of Violation on August 29, 2019 ("NOV2") asserting Plaintiff was in violation of the Pawlet Unified Bylaws Article VIII for having "erected multiple structures" and for "operating a training facility/shooting school." To cure the violation, Plaintiff was required to "eliminate the unpermitted uses on the property, remove all unpermitted buildings, and not allow unpermitted uses to resume on the property" within seven days.

38.     NOV2 ignored NOV1 and the June 2018 Permit which had been issued to Plaintiff 14 months earlier. Plaintiff did not appeal NOV2 because he had no unpermitted uses or unpermitted buildings on the Property, and was therefore, already in full compliance with NOV2.

39.     On information and belief, the Town has rarely enforced alleged zoning violations against property owners by requiring property owners to remove claimed offending structures.

40.     On information and belief, the Town has rarely ever filed legal action against a landowner in the Environmental Court to enforce an alleged zoning violation.

41.     On information and belief, the Town's aggressive pursuit of enforcement against Plaintiff is unprecedented and stands at odds with the usual and customary practices of the Town in dealing with questions of application of the Town's zoning regulations.

**II.      Environmental Division's March 5, 2021 Decision on the Merits and Judgment Order**



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

42.     In September 2019, the Town filed an action in the Environmental Division

9

before Judge Durkin to enforce NOV2. The Town filed a summary judgment motion for, among other things, an order deeming NOV2, including all factual allegations and legal conclusions in it, to become final and binding on Plaintiff, as well as declaratory and injunctive relief, fines, and reimbursement of attorney's fees. Judge Durkin granted the Town's application in part, ruling Plaintiff's failure to appeal NOV2 rendered it final and binding under 24 V.S.A. § 4472(d). As a result, Plaintiff was now precluded from contesting the violations listed in the NOV2. Judge Durkin ordered an evidentiary hearing on all remaining issues.

43.     Following the evidentiary hearing, on March 5, 2021, Judge Durkin issued his Decision on the Merits and Judgment Order ("Judgment Order" attached as Exhibit 1). Pursuant to the Judgment Order, Judge Durkin entered a declaratory judgment in favor of the Town, voiding the June 2018 Permit because ZA Mach lacked jurisdiction to issue it while the DRB's variance decision was on appeal. However, this decision is not supported by any Vermont statute. Specifically, under Rule 5(e) of the Rules for Environmental Court Proceedings, when appealing the issuance of a permit, the permit shall "not take effect until the earlier of 15 days from the date of filing of the notice of appeal or the date of a ruling by the court under this subdivision on whether to issue a stay." No appeal was taken of the June 2018 Permit and no stay was ever issued by the Environmental Division in connection with the variance appeal. Therefore, ZA Mach's jurisdiction to grant or deny Plaintiff's permit application was unrestrained, and the June 2018 Permit was valid.

44.     Next, Judge Durkin ordered Plaintiff to remove all "buildings" on the Property that have not been authorized by a valid zoning permit. Judge Durkin failed to identify the specific "buildings" on the Property Plaintiff was required to remove. This sweeping declaration went well beyond the plain text and meaning of NOV2, which was expressly limited to



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

10

"unpermitted uses...[and] buildings" on the Property relating to the "[operation of] a training facility/shooting school." This decision allowed the Defendants to tack on additional structures and buildings that were not contemplated by NOV2 or even legally permitted to be encompassed by the NOV.

45.     Finally, Judge Durkin permanently enjoined Plaintiff from operating a shooting range/school on the Property and from engaging in any firearms training related activities. Under the plain text of the injunction, this encompasses even private, recreational shooting. The injunction was ordered to be filed with the Town's land records and now binds subsequent property owners "by or through" Plaintiff. As to penalties, the court considered various factors and imposed a $100 daily fine totaling $46,600.00 against Plaintiff.

46.     Plaintiff appealed the Judgment Order to the Vermont Supreme Court ("VSC").

47.     On appeal, the VSC affirmed the Judgment Order in a decision dated January 14, 2022.

### III.     Post-Judgment Motions for Contempt and Fines

48.     Following the VSC's decision, the Town sought to aggressively enforce NOV2 against Plaintiff via a contempt action. The Town's aggressive pursuit to punish Plaintiff was an uncharacteristic show of force motivated primarily by animus toward Plaintiff and against the constitutionally protected right to bear arms.

49.     Relying on the grant of authority provided by the Judgment Order, which extended NOV2 to include virtually all structures presently existing on Plaintiff's property, the Town sought to compel Plaintiff to remove structures that were (a) separate from the operation of "a training facility/shooting school"; (b) erected after the date NOV2 was issued; and/or (c) exempt from zoning regulations under Vermont law.



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

11

50.     This was particularly egregious since it encompassed and targeted structures separate from NOV2 that were ultimately lawfully erected by Plaintiff. Specifically, Plaintiff had ceased operating Slate Ridge as a firearms training facility and transitioned to farming. Plaintiff also built numerous structures in furtherance of his farming activities. Although Plaintiff's farming structures were never contemplated by NOV2, the Town now deemed them subject to NOV2 and moved for deconstruction and removal of the same.

51.     The Town's attempt to tack on Plaintiff's farming structures was problematic because farming is a uniquely protected activity under Vermont law. Specifically, farming structures and activities are entirely exempt from local zoning regulations. Not only were the farming structures distinct from the issuance of NOV2, they also could have never been legally contemplated by NOV2 in the first place.

52.     However, Judge Durkin denied Plaintiff the benefit of raising the farm structure exemption, claiming it to be an impermissible collateral attack on NOV2. In other words, NOV2 was interpreted to include structures beyond its jurisdictional reach.

53.     Ultimately, after numerous post-judgment discovery and related hearings, on February 8, 2023, in its Decision on Post-Judgment Motion for Contempt and Fines ("Post Judgment Decision" attached as Exhibit 2), the court ordered Plaintiff, under the threat of imprisonment, to deconstruct and remove the School Building, shooting ranges, including the berm developments and façade, shipping containers, stair/ladder/platforms, barn, animal run-in, and chicken coop by a date certain.

54.     Judge Durkin further ordered that if the Town finds any of the aforementioned structures existing within the time frame allotted, he will issue a writ of mittimus for the immediate imprisonment of Plaintiff. Upon such event, the Town was granted the authority to



enter the Property and complete the "deconstruction and removal of those structures, uses, and developments described above," and Plaintiff would remain imprisoned until all work was completed. Fines would also continue to accrue at $200 per day until the Town's work was completed and the Town was entitled to recover, in addition to the accumulated fines, reasonable compensatory damages.

55.    Most significantly, Judge Durkin's order granted the Town the power to control Plaintiff's imprisonment since Plaintiff is to remain imprisoned until the Town is satisfied that the offending structures have been removed, and placing no restriction on how long the Town is afforded to complete this work, thereby turning the coercive nature of civil contempt into a punitive tool under the discretion of an adverse party.

56.    Plaintiff moved for reconsideration of the Post Judgment Decision requiring the destruction of the shooting ranges, including the berms, and terms of imprisonment. In an order dated March 3, 3023, Judge Durkin denied Plaintiff's motion for reconsideration.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Equal Protection: Selective Enforcement
(Against All Defendants)

57.    The foregoing allegations are repeated and realleged as if fully set forth herein.

58.    The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike.

59.    Plaintiff was treated differently than other similarly situated individuals.

60.    Plaintiff experienced differential treatment based on impermissible considerations, including an intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

61.    Defendants failed to interpret NOV2 in good faith.



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

13

62.    Defendants greatly sought to expand the scope of NOV2 to include those structures that were either inapplicable to NOV2 or exempt under Vermont law.

63.    Unlike other similarly situated persons, Defendants refused to provide reasonable accommodations to Plaintiff, including, by allowing Plaintiff to repurpose certain structures, such as the School Building.

64.    Unlike other similarly situated persons, Defendants refused reasonable accommodations and opted for immediate deconstruction and removal of all structures on Plaintiff's property.

65.    Defendants sought to compel Plaintiff, under threat of incarceration, to remove his shooting ranges, including the berms, even though the ranges and berms clearly constitute private recreational uses protected by binding Vermont Supreme Court precedent established by *In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998) and *In re Laberge Moto-Cross Track*, 2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011).

66.    Likewise, Defendants sought to compel Plaintiff under the threat of incarceration to remove various farming structures on the Property even though these are also exempt from local zoning regulations.

67.    Defendants conduct is ultra vires.

68.    In so acting, collectively and individually, the Defendants have acted with deliberate indifference, malice, and bad faith against Plaintiff in violation of his constitutional rights.

69.    Defendants have been operating under color of law and in violation of Plaintiff's constitutional rights.

70.    Upon information and belief, Defendants have selectively enforced zoning

regulations knowing full well that other similarly situated individuals were not and had not been subjected to the same aggressive and tedious level of scrutiny.

71.    There is no legitimate state interest or objective justifying the selective, spiteful, targeted, and differential treatment the Defendants have subjected Plaintiff.

72.    As a direct and proximate result of the Defendants' deliberate actions, Plaintiff has sustained both economic and non-economic damages.

### SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Equal Protection: Class of One
(Against All Defendants)

73.    The foregoing allegations are repeated and realleged as if fully set forth herein.

74.    The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike.

75.    Plaintiff was intentionally treated differently from other similarly situated individuals due to the nature of his intended operations – namely, firearms related training and education.

76.    The differential treatment encountered by Plaintiff was motivated by animus toward Plaintiff and his exercise of his constitutionally protected right to bear arms, and resulted in unequal treatment that was inconsistent, arbitrary, and without rational or legitimate basis.

77.    Defendants seek to compel Plaintiff under threat of incarceration to remove his shooting ranges, including the berms, even though the ranges and berms clearly constitute recreational activity protected by binding Vermont Supreme Court precedent established by *In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998) and *In re Laberge Moto-Cross Track*, 2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011).

78.    Likewise, the Defendants have sought to compel Plaintiff under the threat of



Park Plaza · Suite 405
95 St. Paul Street
Burlington, Vt 05402
(802) 651-0013

15

incarceration to remove various farming structures on the Property even though these are exempt from local zoning regulations.

79.     Defendants conduct is ultra vires.

80.     In so acting, collectively and individually, the Defendants have acted with deliberate indifference, malice, and bad faith against Plaintiff in violation of his constitutional rights.

81.     Defendants have been operating under color of law and in violation of Plaintiff's constitutional rights.

82.     There is no legitimate state interest or objective justifying the selective, spiteful, targeted, and differential treatment the Defendants have subjected Plaintiff.

83.     As a direct and proximate result of the Defendants' deliberate actions, Plaintiff has sustained both economic and non-economic damages.

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Substantive Due Process
(Against All Defendants)

84.     The foregoing allegations are repeated and realleged as if fully set forth herein.

85.     The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Cost. Amend. XIV, § 1.

86.     Plaintiff has a substantive due process right to be free from arbitrary government action.

87.     Plaintiff has a valid property interest in the June 2018 Permit granted to him.

88.     Plaintiff has a valid property interest in the school building, shooting ranges, berms, and farming structures present on the Property.



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

89.     Defendants voided the June 2018 Permit in violation of the law.

16

90.     Defendants seek to compel Plaintiff under threat of incarceration to remove his shooting ranges, including the berms, even though the ranges and berms clearly constitute recreational activity protected by binding Vermont Supreme Court precedent established by *In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998) and *In re Laberge Moto-Cross Track*, 2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011).

91.     Defendants also seek to compel Plaintiff under threat of incarceration to remove farming structures on the Property even though such structures are exempt from zoning regulations under Vermont statute.

92.     Plaintiff was deprived of these valid property interests when the Defendants wrongfully (a) voided the June 2018 Permit and (b) ordered the destruction and removal of the shooting ranges, berms, and farming structures under the threat of incarceration.

93.     The Defendants conduct was ultra vires.

94.     Plaintiff dedicated substantial resources—financial and otherwise—in reliance on all of the rights and privileges involved with the erection of these structures.

95.     Plaintiff has a legitimate claim of entitlement, and absent the denial of due process, the June 2018 Permit, shooting ranges, including the berms, and the farming structures would remain undisturbed.

96.     As demonstrated above, the Defendants have deprived the Plaintiff of the aforementioned property interests in a way that is so outrageously arbitrary, conscience shocking, and oppressive in a constitutional sense as to be a gross abuse of government authority.

97.     Each of the individually named Defendants have been personally involved in subjecting the Plaintiff to the constitutional violations alleged herein individually and in concert



with others.

98.     Acting collectively and individually, Defendants have acted with deliberate indifference, malice, and bad faith against Plaintiff in violation of his constitutional rights.

99.     Defendants have been operating under color of law and in violation of Plaintiff's constitutional rights.

100.    As a direct and proximate result of Defendants' deliberate actions, Plaintiff has sustained both economic and non-economic damages.

## FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – Second Amendment Violation
(Against All Defendants)

101.    The foregoing allegations are repeated and realleged as if fully set forth herein.

102.    Plaintiff's development and use of a shooting range on his 30 acres of undeveloped, heavily wooded, rural property, whether for private or public use, is protected activity under the Second Amendment.

103.    The Second Amendment protects the individual right to keep and bear arms. U.S. Cost. Amend. II; *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).

104.    When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

105.    Implied in the text of the Second Amendment is a "corresponding right to acquire



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

and maintain proficiency" with common weapons. *Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2021) citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

106.    Equally important to the right to acquire and maintain proficiency in arms, is having access to places to engage in firearm related education, training, and practice.

107.    For this reason, the operation of a shooting range, whether for private or public use, is protected activity under the Second Amendment.

108.    To the extent zoning regulations or zoning decisions deny an individual the right to operate a shooting range on their property, the regulation or denial must be consistent with the Nation's historical tradition of firearm regulation. *Bruen,* 142 S. Ct. at 2138

109.    Plaintiff formed a not for profit firearms training plan and constructed shooting ranges on his property for firearms related education, training, and practice.

110.    Plaintiff's property is over 30 acres of heavily wooded, undeveloped, rural land.

111.    Defendants seek to compel Plaintiff under threat of incarceration to deconstruct and remove the shooting ranges and berms.

112.    A permanent injunction was also filed against the Property restraining Plaintiff from engaging in any firearms related training activities on the Property.

113.    There is no historical evidence demonstrating a tradition denying individuals from operating and constructing shooting ranges for firearms related training, education and practice on privately owned, 30-acres of rural, undeveloped land.

114.    Defendants' conduct restraining and prohibiting the Plaintiff from operating a shooting range on his property, whether for private or public use, violates the Second Amendment.



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter Judgment against the Defendants as follows:

1.     Finding that Defendants conduct constitutes a violation of Plaintiff's Second Amendment and Fourteenth Amendment rights under the United States Constitution;

2.     An order terminating the permanent injunction filed against the Property prohibiting any firearms related activity;

3.     An order revoking NOV2;

4.     An order reinstating the June 2018 Permit;

5.     Enjoining and restraining Defendants from enforcing all prior, current or future orders requiring the deconstruction and removal of Plaintiff's gun ranges, berms, and farm structures;

6.     Awarding actual, nominal, punitive, compensatory, and consequential damages in an amount to be determined at trial;

7.     Awarding reasonable attorney's fees and costs expended in connection with the prosecution of this action pursuant to 42 U.S.C. § 1988; and

8.     Awarding such other relief as this Court may deem just, proper, and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

DATED at Burlington, Vermont, this 30th day of May, 2023.

Respectfully Submitted,

DANIEL BANYAI

By Counsel

KAPLAN AND KAPLAN

Robert J. Kaplan, Esquire
95 St. Paul Street, Suite 405
Burlington, Vermont 05401
(802) 651-0013
(802) 448-3478 (fax)
rkaplan@kaplanlawvt.com

## VERIFICATION

I, Daniel Banyai, certify that the foregoing facts are true and correct to the best of my

knowledge and belief.

Daniel Banyai

STATE OF VERMONT
COUNTY OF _Rutland_

The foregoing instrument was acknowledged before me this 30th day of May, 2023 by
Daniel Banyai who acknowledged the same to be his free act and deed.

(Seal)                                    Signature of Notary Public
My Commission Expires: 1/31/2025

KAPLAN   KAPLAN
ATTORNEYS AT LAW

PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013