UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAY 30 PM 1:50

CLERK

BY

DEPUTY CLERK

------------------------------------------------------------------------X

DANIEL BANYAI,

                                    Plaintiff,

Case No. 2:23-cv-101

          -against-


TOWN OF PAWLET, JUDGE THOMAS S. DURKIN,
and JOHN AND JANE DOE 1 through 20, whose
identities are unknown at present.

                                    Defendants.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND/OR PERMANENT INJUNCTION

COMES NOW, Plaintiff, Daniel Banyai by and through counsel, Robert J. Kaplan, Esquire and KAPLAN AND KAPLAN and in support of Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction, states as follows:

### I.      Introduction

Defendants seek, under the threat of immediate arrest and incarceration, to compel Plaintiff to deconstruct and remove various structures existing on his property. Upon application of Defendant Town of Pawlet (the "Town"), Defendant Judge Thomas S. Durkin, presiding judge of the Environmental Division ("Judge Durkin") issued a final order on February 8, 2023, titled Decision on Post-Judgement Motion for Contempt and Fines ("Post Judgment Order"), requiring Plaintiff to deconstruct and remove a school building, outdoor shooting ranges, including berm developments and a façade, shipping containers, stair/ladder/platforms, a barn, animal run-in, and chicken coop by a date certain.



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

The Post Judgment Order requiring the deconstruction and removal of the aforesaid structures on Plaintiff's property stems from a Notice of Violation dated August 29, 2019, alleging Plaintiff was in violation of the Pawlet Unified Bylaws Article VIII for having "erected multiple structures" and for "operating a training facility/shooting school" ("NOV"). The NOV, the plain text of which is clearly limited to the operation of Plaintiff's firearms training school, known as "Slate Ridge," has been unlawfully expanded to include all structures existing on Plaintiff's property, irrespective of whether the subject structures could be legally encompassed by the NOV.

As it stands, the Post Judgment Decision requires Plaintiff to remove the school building, shooting ranges and berm developments by May 25, 2023. If Plaintiff fails to remove any one of these structures, the Post Judgment Decision requires the immediate arrest and incarceration of Plaintiff, as well as the imposition of significant fines and penalties. The Town will also enter his property and remove the structures while he is imprisoned. If Plaintiff does comply by the compliance date established by the Post Judgment Decision, he will still suffer a deprivation of his Fourteenth Amendment rights under the United States Constitution. Plaintiff requests that this Court enter a temporary restraining order, followed by a preliminary and/or permanent injunction, to stop the irreparable harms Plaintiff is suffering and will continue to suffer absent emergency relief. An order restraining the enforcement of the Post Judgment Decision is necessary to prevent the immediate incarceration of the Plaintiff, destruction of his property, and the violation of his Fourteenth Amendment rights under the United States Constitution.

## II.    Plaintiff Has Standing

To show standing, an individual plaintiff must suffer a concrete and particularized invasion of a legally protected interest that is either actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This injury must be fairly traceable to the challenged action of the defendant and



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

likely to be redressed by a favorable decision. *Id.* at 560–61. For pre-enforcement challenges, "[a] party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 (2008). "[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Plaintiff's failure to comply with the Post Judgment Decision by May 25, 2023, will result in his immediate arrest and incarceration, as well as the unlawful destruction of his property by the Town. Even if Plaintiff complies with the Post Judgment Decision, he will still suffer from the unlawful destruction of his property. In either case, Plaintiff faces a real, immediate and direct threat to his Fourteenth Amendment rights under the United States Constitution by virtue of enforcement of the NOV via the Post Judgment Decision. Therefore, Plaintiff has standing to bring this application.

### III.   Plaintiff is Entitled to a Temporary Restraining Order and Preliminary Injunction

"In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction." *Chestnut Hill NY, Inc. v. City of Kingston*, No. 1:17-CV-0095 (BKS/DJS), 2017 U.S. Dist. LEXIS 226807 (N.D.N.Y. Feb. 22, 2017). The standard for a preliminary injunction requires Plaintiffs to "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "In cases alleging constitutional injury, a strong showing of a constitutional deprivation that results in noncompensable damages ordinarily warrants a finding of irreparable harm. Likelihood of success



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

on the merits is therefore 'the dominant, if not the dispositive, factor.'" *A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021).

### A. Plaintiff is Likely to Succeed on the Merits

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Cost. Amend. XIV, § 1. Causes of action based on a violation of the substance due process clause "[require] the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999); *see also Rackley v. City of New York*, 186 F.Supp.2d 466, 479 (S.D.N.Y.2002). With respect to the first requirement, the Second Circuit applies "a strict 'entitlement' test to determine whether a party's interest ... is protectable under the Fourteenth Amendment." *Zahra v. Town of Southold*, 48 F.3d 674 2d Cir. (1995).

Under the strict entitlement test, "to establish a federally protectable property interest," a plaintiff must demonstrate that "there was no uncertainty regarding his entitlement to it under applicable state or local law, and [that] the issuing authority had no discretion to withhold it in his particular case." *Stahl York Ave. Co., LLC v. City of N.Y.*, No. 14 CIV. 7665 (ER), 2015 WL 2445071 (S.D.N.Y. May 21, 2015) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 n.1 (2d Cir. 1999)); see also *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) ("[O]ur precedent makes clear that the analysis of whether a landowner has a protectable property interest in a particular land use benefit focuses on the degree of official discretion and not on the probability of its favorable exercise.") (internal quotation marks and citations omitted). "[I]n almost all cases, the existence of a federally protectable property right is an issue of law for the court," *Cunney v. Bd. of Trustees of Vill. of Grand View*, 56 F. Supp. 3d 470, 494 (S.D.N.Y. 2014) (internal quotation



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

marks and citations omitted), "[b]ecause the focus of this inquiry is on the degree of the issuing

agency's official discretion." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir.

1998). Therefore, in applying the entitlement test, courts look to "existing rules or understandings

that stem from an independent source such as state law to determine whether a claimed property

right rises to the level of a right entitled to protection under the substantive due process doctrine."

*DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998) (internal quotation

marks omitted) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 212 (2d Cir.1988) (quoting *Bd.*

*of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548

(1972))).

As to the second requirement, the "arbitrary or irrational" standard is met only where

"official conduct [is] outrageous and egregious under the circumstances." *Lombardi v. Whitman*,

485 F.3d 73, 81 (2d Cir. 2007); see also *Ruston v. Town Bd. for Town of Skaneateles*, No. 5:06-

CV-927 (FJS/GHL), 2008 WL 5423038 (N.D.N.Y. Dec. 24, 2008) ("Substantive due process is

an outer limit on governmental action; therefore, it does not forbid arbitrary and capricious conduct

correctable in a state-court review of an administrative action.").

As detailed below, Plaintiff has a valid property interest in the shooting ranges, including

the berms, and all farm structures subject to the Post Judgment Order.

    *i.*    *The Shooting Ranges and Berms*

The shooting ranges, including the berms, are protected recreational uses of private

property under Vermont law that do not require a permit. The Vermont Supreme Court ("VSC")

has been clear that recreational property features derived from the natural elements, like Plaintiff's

shooting ranges and berms, are exempt from zoning regulations.



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

In the case of *In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998) (*"Scheiber"*), the VSC

declined to order the deconstruction of an outdoor shooting range on private property that consisted

of large earthen berms, targets, and other features. In the case of *In re Laberge Moto-Cross Track*,

2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011), parties constructed a moto-cross track that consisted

of a "three-to-four-foot-wide track [that] ran one half-mile" and was made by "fashioning a series

of earthen jumps and berms using a small law-tractor to shift on-site excavation materials." *Id.* at

578, 579. The VSC, relying on *Scheiber*, also declined to order deconstruction of the motocross

track.

Just like *Scheiber*, Plaintiff created two shooting ranges out of earthen berms and installed

two shooting benches on one of the ranges, with a cover over the benches. The ranges are sunk

below ground level, with berms rising up around them forming backstops. Pines have been planted

on top of the vegetated berms and the area is thickly wooded. Consistent with the precedent

established by *Scheiber* and *Laberge*, Plaintiff's shooting ranges and the berms clearly constitute

private recreational land use for which no zoning permit was required.

The shooting ranges and the berms constitute a protected property interest as established

by *Scheiber* and *Laberge*. Accordingly, Defendants in this case had no discretion or authority to

interfere or otherwise deny Plaintiff the right to develop the outdoor shooting ranges and berms.

ii.     *Farming Structures*

Like the shooting ranges and berms, "farm structures" are also exempt from zoning

regulations. Vermont law is clear that "farm structures" are exempt from zoning regulations in

their entirety. See, 24 V.S.A. § 4413(d)(1) ("A bylaw under this chapter shall not regulate: (A)

required agricultural practices, including the construction of farm structures, as those practices are

defined by the Secretary of Agriculture, Food and Market."). A "farm structure" is defined as "a



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

6

building, enclosure, or fence for housing livestock, raising horticultural or agronomic plants, or carrying out other practices associated with accepted agricultural or farming practices, including a silo, as "farming" is defined in 10 V.S.A. § 6001(22), but excludes a dwelling for human habitation." See, 24 V.S.A. § 4413(d)(2)(A). The only requirement is that an individual must notify their municipality that they will be constructing a farm structure. See, 24 V.S.A. § 4413(d)(3)(a "person shall notify a municipality of the intent to build a farm structure and shall abide by setbacks approved by the Secretary of Agriculture, Food and Markets..."). However, the statute does not require notice as a condition precedent to obtaining classification as a "farm structure" nor does it set forth a penalty for failing to provide such notice.

Most importantly, a municipality has no discretion in connection with the construction of a farm structure. See 24 V.S.A. § 4413(d)(3) ("no municipal permit for a farm structure shall be required."). This lack of discretion is consistent with the Vermont Legislature's intent seeking to implement protective right-to-farm legislation. See 12 V.S.A. § 5751-53 (2018); *see also, Trickett v. Ochs*, 838 A.2d 66, 73 (Vt. 2003) ("There is little doubt as to the purpose behind Vermont's right-to-farm law. Indeed, virtually all states have enacted right-to-farm laws to deal with the conflict that develops '[a]s the population of the nation grows and is dispersed into traditionally rural areas.'"). Therefore, local zoning officials have no discretion to deny the construction of a farm structure.

Defendants' seek to compel Plaintiff to remove shipping containers, which are used by Plaintiff to store hay, animal feed, and other faming equipment and materials, a barn, animal run-in, and a chicken coop. There is no dispute that these structures are used to carry out Plaintiff's farming practices and therefore, qualify as a "farm structure." Accordingly, the Defendants in this case had no discretion or authority to require the removal of these structures.



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

### iii.    *Irrational Enforcement of the NOV*

The justification for the unconstitutional invasion of Plaintiff's protected property interests stems from enforcement of the NOV. Specifically, Defendants have asserted they are permitted to compel the removal of Plaintiff's protected property interests because he failed to timely appeal the NOV under 24 V.S.A. § 4472(d). Known as the "finality rule," this statute forever waives an individual's right to "contest, either directly or indirectly, the decision or act, provision, or decision of the [municipal] panel in any proceeding, including any proceeding brought to enforce this chapter."

Notwithstanding the powerful effect of 24 V.S.A. § 4472(d), it is axiomatic that the government may not engage in *ultra vires* acts. In this case, Defendants have sought to enforce the NOV well beyond the scope of their jurisdiction established by the NOV. Specifically, the shooting ranges, berms, and farm structures each fall outside the plain text of the NOV and importantly, constitute protected property interests clearly established under Vermont statutes and case law. Nevertheless, Defendants egregiously interpreted the NOV to include even those structures that it could not lawfully exercise jurisdiction over.

Even more egregious, Defendants have threatened Plaintiff with immediate arrest, imprisonment, and a substantial imposition of fines for failing to destroy the structures and features that he is lawfully permitted to have on his property without a permit. It is irrelevant whether Plaintiff failed to appeal the NOV initially. Plaintiff's failure to appeal does not provide Defendants *carte blanche* to enforce the NOV beyond that which it can lawfully be permitted to address, although this is exactly what Defendants have so far accomplished in this case.

Due to the Defendants' obvious *ultra vires* conduct in enforcing the NOV, Plaintiff has demonstrated a substantial likelihood of success on his substantive due process claim.



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

## B.  Plaintiff Will Continue to Suffer Irreparable Harm Absent Preliminary Relief

A "showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citations omitted). Under the irreparable harm requirement, parties "must show that, on the facts of their case" they will suffer a harm that "cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81–82 (2d Cir. 2010). In addition, the harm must be "neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer,* 408 F.3d 112, 114 (2d Cir. 2005)

It is well-settled that an alleged constitutional violation constitutes irreparable harm. See *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury." (internal quotation marks and citations omitted)); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary). Even an ephemeral constitutional violation causes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quoting *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996) ("The denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for 'minimal periods'....").



PARK PLAZA · SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

9

Here, absent a restraining order, Defendants will seek to enforce the Post Judgment Decision against Plaintiff. By May 25, 2023, Plaintiff is required to deconstruct and remove the school building, shooting ranges and berm developments. If Plaintiff fails to comply, the Post Judgment Decision requires Plaintiff to be immediately arrested and imprisoned. Thereafter, the Town will be permitted to enter the Plaintiff's property and remove all the structures and other features currently existing on Plaintiff's property that form the subject of this case. Plaintiff will remain imprisoned until such time as the Town, in its unfettered discretion, chooses to complete deconstruction and removal. Alternatively, if Plaintiff complies with the Post Judgment Decision, he will still suffer the unconstitutional invasion and destruction of his property. Accordingly, Plaintiff faces imminent, serious, adverse consequences absent the requested relief.

## C. The Balance of Equities Tips Overwhelmingly in Plaintiff's Favor

"Where the Government is the opposing party, the final two factors in the temporary restraining order analysis—the balance of   the equities and   the   public   interest—merge." *Coronel v. Decker*, 449 F.Supp.3d 274, 287 (S.D.N.Y. Mar. 27, 2020) (citing *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018)).

"The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld." *Coronel*, 449 F.Supp.3d at 287 (quoting *Sajous v. Decker*, 2018 WL 2357266, at *13 (S.D.N.Y. 2018)); see also *Doe v. University of Connecticut*, 2020 WL 406356, at *6 (D. Conn. Jan. 23, 2020) (noting the "public interest in avoiding violations of constitutional rights"); *Barbecho v. Decker*, 2020 WL 1876328, at *7 (S.D.N.Y. Apr. 15, 2020);

Plaintiff commenced the within action setting forth the violation of his Second and Fourteenth Amendment rights guaranteed under the United States Constitution. The public interest



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

requirement clearly weighs in favor of Plaintiff, as it is always in the public interest to prevent the violation of a constitutional right. *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

Furthermore, the balance of equities overwhelmingly tips in favor of Plaintiff. The remedy Plaintiff requests is to keep the status quo and restrain the Defendants from enforcing the Post Judgment Decision pending the resolution of this case or until a hearing on the motion for a preliminary injunction is conducted. The practical effect of the restraining order would be to prevent the deconstruction of the structures and other features existing on Plaintiff's property. These structures will not pose any threat or harm to the Defendants or the public if they are permitted to stand pending resolution of this dispute. Alternatively, if a restraining order is not granted, Plaintiff will face immediate arrest, incarceration and the compelled destruction of his property.

## IV.    Conclusion

For the foregoing reasons, the Court should issue a temporary restraining order prohibiting enforcement of, and then preliminarily and permanently enjoining, enforcement of the Post Judgement Decision, including any related prior or subsequent orders thereto.

DATED at Burlington, Vermont, this 30th day of May, 2023.

Respectfully Submitted,

DANIEL BANYAI

By Counsel



PARK PLAZA - SUITE 405
95 ST. PAUL STREET
BURLINGTON, VT 05402
(802) 651-0013

KAPLAN AND KAPLAN

Robert J. Kaplan, Esquire
95 St. Paul Street, Suite 405
Burlington, Vermont 05401
(802) 651-0013
(802) 448-3478 (fax)
rkaplan@kaplanlawvt.com

