UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| DANIEL BANYAI,        ) | |
|       Plaintiff    ) | |
|       ) | CASE NO. 2:23-CV-101 |
| v.       ) | |
|       ) | |
| TOWN OF PAWLET,       ) | |
| JUDGE THOMAS S. DURKIN,    ) | |
| and JOHN AND JANE DOE 1    ) | |
| through 20, whose identities are    ) | |
| unknown at present,       ) | |
|     Defendants.  ) | |

## TOWN OF PAWLET'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND/OR PERMANENT INJUNCTION

The Town of Pawlet, by and through its attorneys, Carroll, Boe, Pell & Kite, P.C., hereby

files its Opposition to Plaintiff's Motion for a Temporary Restraining Order, Preliminary

Injunction and/or Permanent Injunction ("TRO Motion") and in support thereof, states as

follows:

### MEMORANDUM OF LAW

#### Procedural and factual background

This dispute[1] centers on a 30± acre parcel of land located at 541 Briar Hill Road in

---

[1] In the last three and a half years, this dispute has run through two separate actions, has been before the Vermont Supreme Court, and has generated at least six substantive written opinions. *See In re Banyai*, Docket No. 53-5-18 Vtec, 2019 Vt. Super. LEXIS 3, *1 (Vt. Env. Ct. Jan. 4, 2019) (vacating development review board decision and remanding with instruction to "evaluate the merits of Mr. Banyai's variance application" regarding a nonconforming 30-foot driveway); *Town of Pawlet v. Banyai*, Docket No. 105-9-19 Vtec, 2020 Vt. Super. LEXIS 96, *8–10 (Vt. Env. Ct. June 5, 2020) (holding that Mr. Banyai failed to appeal an August 29, 2019 Notice of Violation and was therefore "b[ound] . . . to the determinations made therein"); *Town of Pawlet v. Banyai*, Docket No. 105-9-19 Vtec, 2021 Vt. Envtl. LEXIS 4, *7–8 (Vt. Env. Ct. Jan. 21, 2021) (granting Town of Pawlet's request for preliminary injunction preventing Mr. Banyai from operating an unpermitted shooting range based on "the high risk of potential harm to other parties and the public interest in adequate notice of an unpermitted shooting range's potential activities"); *Town of Pawlet v. Banyai*, 2021 Vt. Super. LEXIS 8, *22–24 (Vt. Env. Ct. March 5, 2021) (permanently enjoining Mr. Banyai from "the unpermitted use of his property"); *Banyai Zoning Permit Appeal*,

Pawlet, Vermont.[2] Beginning no later than 2017, Plaintiff Daniel Banyai ("Plaintiff" or "Mr. Banyai") installed on the property a variety of improvements[3] (including buildings, shipping containers, fuel tanks, facades, targets, and berms) and used these improvements in the operation of a shooting range and a firearms training facility under the name of "Slate Ridge."[4]

On August 29, 2019, the Pawlet Zoning Administrator issued a Notice of Violation (the "NOV2")[5] to Mr. Banyai, informing him,

> he was in violation of Article VIII § 2 of the Bylaws. Specifically, the NOV stated that Mr. Banyai "erected multiple structures in violation of this provision, and [was] operating a training facility/shooting school in violation of this provision."[6]

NOV2 found that the "only permitted use on the 541 Briar Hill Road property is a 24' by 23' garage/apartment."[7] NOV2 informed Mr. Banyai of his right to appeal the NOV.[8] Mr. Banyai did not appeal NOV2.[9]

---

Docket No. 21-ENV-00084, 2021 Vt. Super. LEXIS 113, *6–7 (Vt. Env. Ct. October 13, 2021) (dismissing appeal on ground that Mr. Banyai's failure to timely appeal zoning permit denial deprived court of jurisdiction over appeal); *Town of Pawlet v. Banyai*, 2022 VT 4, ¶ 40, 216 Vt. 189, 207–08 (affirming March 5, 2021 Merits Decision, holding the August 2019 NOV "is final and binding under 24 V.S.A. § 4472 and landowner is precluded from challenging any of the violations contained in it.").

[2] See TRO Motion, Exhibit 1, *Town of Pawlet v. Daniel Banyai*, Vermont Superior Court, Environmental Division, Docket No. 105-9-19 Vtec, Decision on the Merits, dated March 5, 2021 (the "Merits Decision") at p. 5, Findings of Fact ¶ 1.

[3] See TRO Motion, Exhibit 2, Decision on Post-Judgment Motion for Contempt and Fines, dated February 8, 2023, at pp. 7–9 (providing list of structures installed on property as of the date of the Contempt Hearing) ("Contempt Order").

[4] Merits Decision at p. 6, ¶ ¶7–9.

[5] There are two Notices of Violation involved in the procedural history of this matter. The NOV2 is the NOV at issue in this action.

[6] Contempt Order at p. 9, ¶ 29.

[7] *Id.* at ¶ 30.

[8] *Id.* at ¶ 31.

[9] *Id.* at ¶ 32.

Mr. Banyai did not cure the violations identified in NOV2, and, on September 16, 2019, the Town of Pawlet filed an action in Vermont Superior Court, Environmental Division, against Mr. Banyai seeking enforcement of NOV2.[10] On June 5, 2020, the Environmental Court granted summary judgment to the Town, concluding that NOV2 was properly served, that Mr. Banyai failed to timely appeal NOV2, that 24 V.S.A. § 4472 provided the sole remedy for appeal from zoning determinations, and that, because Mr. Banyai failed to timely appeal NOV2, he is now barred from challenging the factual or legal determinations of NOV2.[11] The Court deferred ruling on relief until after a merits hearing to permit development of a further factual record.

Following a merits hearing in December 2020, the Environmental Court issued the Merits Decision, in which it permanently enjoined Mr. Banyai from the unpermitted use of his property, and imposed fines for the zoning violations, and an accompanying judgment order.[12] In the Merits Decision, the Environmental Court declined to preemptively grant the Town permission to enter the property and bring it into compliance should Mr. Banyai fail to comply with the Court's order, concluding that such a "drastic" ruling would only take place in a contempt proceeding, and would require "credible evidence of Mr. Banyai's alleged contemptuous behavior."[13]

Mr. Banyai appealed the Merits Decision to the Vermont Supreme Court. Before the Vermont Supreme Court, Mr. Banyai argued, *inter alia*, as he does here, that "NOV2 is invalid [because] landowner's alleged violations are for private recreational land uses not subject to

---

[10] *Town of Pawlet v. Daniel Banyai*, Docket No. 105-9-19 Vtec.

[11] Exhibit 1, Merits Decision, at pp. 12–13.

[12] *Id.* at pp. 13–20.

[13] *Id.* at ¶ 21.

3

municipal zoning." *Town of Pawlet v. Banyai*, 2022 VT 4, ¶ 11, 216 Vt. 189, 196. Mr. Banyai also raised a federal constitutional argument in his appeal, under the First Amendment. The Vermont Supreme Court rejected all of Mr. Banyai's arguments. With respect to Mr. Banyai's argument that Mr. Banyai's alleged violations were not subject to the zoning regulations, the Vermont Supreme Court explained:

> Landowner counters that NOV2 is invalid because it incorrectly denies the validity of the June 2018 Permit and attempts to regulate private recreational land uses not subject to municipal zoning. The extent to which these arguments might be correct is irrelevant because the strict and clear rule of finality in § 4472 explicitly operates to bar collateral attacks regardless of their merit. *See* 24 V.S.A. § 4472(a) (stating appeal of zoning official's decision is "exclusive remedy" for "any decision or act taken" (emphasis added)); *City of S. Burlington*, 171 Vt. at 588-89, 762 A.2d at 1230 (explaining statute prevents all collateral attacks). Our precedent is clear that § 4472 applies even when the unappealed decision or act is incorrect or made without proper authority. *See City of S. Burlington*, 171 Vt. at 588-89, 762 A.2d at 1230 (tracing our substantial precedent on issue); *see also, e.g., Phillips Constr. Servs., Inc. v. Town of Ferrisburg*, 154 Vt. 483, 485, 580 A.2d 50, 51 (1990) (determining permit, even if void as ultra vires, was final).

*Town of Pawlet v. Banyai*, 2022 VT 4, ¶ 18, 216 Vt. 189, 198–199.

The Vermont Supreme Court affirmed the Environmental Court's March 5, 2021 Merits Decision in its entirety:

> To summarize, NOV2 is final and binding under 24 V.S.A. § 4472 and landowner is precluded from challenging any of the violations contained in it. Therefore, landowner cannot rely on the June 2018 Permit, whatever its initial validity, or on his general assertion that the improvements on and uses of his property are not subject to municipal zoning. The trial court also did not admit three of the exhibits challenged as a sanction and admission of the fourth, if in error, was harmless. Finally, the trial court did not abuse its discretion in assessing the fines due as a result of the violations.

*Town of Pawlet v. Banyai*, 2022 VT 4, ¶ 40, 216 Vt. 189, 207–208.

During the pendency of the appeal before the Vermont Supreme Court, the Town moved for an order of contempt based on noncompliance,[14] upon which the Environmental Court deferred. After the Vermont Supreme Court affirmed the Merits Decision, the Town renewed its Motion for Contempt and Fines. After an evidentiary hearing, the Environmental Court issued the Contempt Decision, finding Mr. Banyai in "willful" contempt of the March 5, 2021 Order.[15] However, instead of immediately imprisoning Mr. Banyai, or imposing fines, the Court provided Mr. Banyai with the

> opportunity to purge himself of the contempt he has willfully created. Should he choose to not cure the violations pursuant to the compliance schedule, but rather "continue[] [his] experimentation in disobedience of the court order," the Court finds that it will be necessary to imprison Respondent for his ongoing disobedience. *Socony Mobil Oil Co.*, 126 Vt. at 167.[16]

The Contempt Decision provides that, if Mr. Banyai does not comply with the Environmental Court's orders, then the Town may move the court for a writ of mittimus for the immediate imprisonment of Mr. Banyai. Under the Contempt Decision, if such a motion were approved, Mr. Banyai could be incarcerated until the deconstruction of the unpermitted buildings is accomplished. Contempt Decision at 28. The Town of Pawlet, by and through its counsel, Woolmington, Campbell, Bent & Stasny, P.C., has, in fact, filed a motion for mittimus in Docket No. 105-9-19 Vtec on June 1, 2023. *See* attached Exhibit A, with accompanying Exhibits.

---

[14] Under Vermont Rule of Civil Procedure 62(a)(2), there is no automatic stay pending appeal with respect to injunctive relief unless specifically ordered by the Court, which had not occurred with respect to the Environmental Court's injunction..

[15] See, e.g., Contempt Decision at 25 ("Respondent has repeatedly, willfully, perhaps enthusiastically, continued to ignore this Court's Orders in the past, and the Court concludes that it would be unwise to proceed without imposing prospective sanctions for possible further violations. As noted above, the Court finds that the circumstances here—specifically, Respondent's "continual and unrepentant disregard of the [Court's Orders]"— support the conclusion that prospective fines and other sanctions are necessary here.").

[16] Exhibit 2, Contempt Decision at 25.

The Environmental Court issued its Contempt Decision on February 8, 2023. Mr. Banyai filed a Motion to Reconsider, which motion the Environmental Court disposed of in two parts, with written decisions issued on March 24, 2023 and April 21, 2023. Following the Environmental Court's denial of the Motion to Reconsider, Mr. Banyai did not file a timely appeal of the Contempt Decision to any Vermont court, even though a contempt order is considered a final order appealable as of right under Vermont law. *State v. Barrows*, 158 Vt. 445, 447–48 (1992). Now, Mr. Banyai asks this federal district court to enjoin a Vermont state court from enforcing its own unappealed order finding Mr. Banyai in contempt of a merits decision that was fully and finally reviewed and affirmed by the Vermont Supreme Court.

Under these circumstances, Mr. Banyai is not entitled to an injunction of any sort, be it temporary, preliminary or permanent.

## **Argument**

### I.   **This Court should abstain from enjoining the Environmental Court's Contempt Order based on *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971), and its progeny.**

*Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971) and its progeny instruct that, in certain limited circumstances, federal courts should abstain from intervening in a pending state court proceeding. "To justify a refusal to assume jurisdiction on *Younger* grounds, a district court must answer three questions affirmatively: (1) is there an ongoing state proceeding; (2) is an important state interest implicated; (3) does the plaintiff have an avenue open for review of constitutional claims in the state court? *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990).

The first requirement is clearly met. The Contempt Decision is part of an ongoing state action to enforce both the unappealed NOV2 and the Environmental Court's March 5, 2021 Merits Decision.

The third requirement is also clearly met. Under Vermont law, a plaintiff with constitutional claims may, by appeal, seek a de novo trial in Superior Court. 24 V.S.A. § 4472(b); *Littlefield v. Colchester*, 150 Vt. 249, 250, 552 A.2d 785, 786 (1988). Where a constitutional challenge arises in the context of a zoning enforcement action (or other proceedings under Title 24, chapter 117 of the Vermont Statutes), it may be raised before and addressed by the Environmental Court. 24 V.S.A. § 4472(b). Moreover, Vermont law recognizes that failure to appeal a permit decision does not bar a person from pursuing a separate action under 42 U.S.C. § 1983 for violation of his or her constitutional rights.  *Littlefield*, 150 Vt. at 250. Accordingly, Plaintiff had multiple "avenue[s] open for review of any constitutional claims" under Vermont state law.

This leaves only the question of whether the state court proceedings implicate an "important state interest." The United States Supreme Court has recognized that proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts" constitute an important state interest for *Younger* abstention purposes. *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 72–73, 134 S. Ct. 584, 588 (2013). A state court contempt proceeding intended to ensure enforcement of Vermont state court orders falls squarely within this class of cases, and indeed, *Sprint* expressly identified civil enforcement actions as actions that fall within the *Younger* abstention doctrine, because such "enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 79, 134 S. Ct. 584, 592 (2013); *also Disability Rights N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019); *Wandyful Stadium v. Town of Hempstead*, 959 F. Supp. 585, 590 (E.D.N.Y. 1997); *Pervu v. City of Oneonta*, 2020 U.S. Dist. LEXIS 57564, *14–15, 2020 WL 1643392 (N.D.N.Y. 2020).

Moreover, "[i]n the context of applying the *Younger* abstention doctrine, federal courts have found that 'the State has an important interest in regulating zoning and land use.'" *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (other citation omitted).

As the extensive factual and legal discussion above shows, the present dispute comes to this federal court as a Vermont state court is being asked to enforce its own contempt order with regard to a zoning enforcement proceeding. This is a perfect candidate for *Younger* abstention. Accordingly, the Town respectfully requests this Court abstain from deciding Plaintiff's TRO Motion and allow the state court proceeding to run its course.

## II.   Plaintiff is precluded from raising the issues he seeks to raise in the TRO Motion.

In the event the Court determines that *Younger* abstention is inappropriate in this case, this Court should find that Plaintiff is precluded from asserting the arguments advanced in the TRO Motion. The factual background above shows that Plaintiff's present predicament is premised almost entirely on his failure to appeal NOV2, which recognized only one permitted use for the property and determined that all other structures on and uses of the property were unpermitted and violated the Pawlet Zoning Regulations. The March 5, 2021 Merits Decision concluded that Plaintiff's failure to appeal the NOV2 precluded Plaintiff from challenging the factual and legal determinations contained therein, and the Vermont Supreme Court agreed. The Environmental Court incorporated that resolved issue into its February 2, 2023 Contempt Decision, which Plaintiff also did not appeal, even though a contempt order is a final order appealable as of right under Vermont law. The key issue before this Court is not whether the Zoning Administrator was correct in the first instance with respect to the zoning determinations in NOV2, but whether Plaintiff is entitled to challenge those determinations now in this federal court action.

The Environmental Court's and the Vermont Supreme Court's ruling are premised on simple, straightforward rules of *res judicata*—when a party foregoes the opportunity to appeal a final order, he or she is precluded from contesting the factual and legal determinations contained therein—even if the factual or legal determinations are incorrect. The Vermont decisions cite applicable Vermont law on this subject, and the Vermont *res judicata* law is largely consistent with federal law, which also holds that *res judicata* will prevent a challenge to a final, unappealed order even if "the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981); *also, e.g., Taveras v. UBS AG*, 612 Fed. Appx. 27, 30 (2d Cir. 2015); *Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.)*, 255 F.3d 87, 94 (2d Cir. 2001); *Harry v. Rodriguez*, 337 Fed. Appx. 17, 18 (2d Cir. 2009); *New York State NOW v. Terry*, 159 F.3d 86, 96 (2d Cir. 1998).

Moreover, "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply Vermont claim preclusion law to Vermont state court judgments. *Demarest v. Town of Underhill*, 2022 U.S. App. LEXIS 33638, *2, 2022 WL 17481817 (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)).

The TRO Motion asks this Court to interpret state court adjudications of applicable zoning regulations, based on state law. These determinations do not involve any federal question, and the Vermont Supreme Court has already held that Plaintiff is precluded from making the zoning interpretation arguments he makes here in his TRO. Accordingly, Plaintiff's attempt to collaterally attack the Contempt Decision via this TRO Motion based on these interpretations of local zoning ordinances must be rejected. Therefore, as a separate and independent ground for denying Plaintiff's TRO Motion, the Town respectfully requests the Court deny Plaintiff's

request for a temporary restraining order on the ground that he is precluded from challenging the legal and factual findings of NOV2, the Merits Decision, or the Contempt Decision with respect to the proper interpretation of Pawlet's zoning regulations and the res judicata effect of § 4472.

### III.   Plaintiff is not entitled to a Preliminary Injunction.

Even if this Court is inclined to consider the merits of Plaintiff's TRO Motion, Plaintiff fails to show he is entitled to a temporary restraining order or preliminary injunction based on his substantive due process claim.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008); *see also Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138  [*140] L. Ed. 2d 162 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

In his Complaint, Plaintiff asserts four Causes of Action: (1) an Equal Protection: Selective Enforcement Claim;[17] (2) an Equal Protection: Class of One Claim;[18] (3) a Substantive

---

[17] Complaint (Doc. 1) at ¶¶ 57–72 (First Cause of Action).

[18] *Id*. at ¶¶ 73–83 (Second Cause of Action).

Due Process Claim,[19] and (4) a Second Amendment Violation.[20] Plaintiff bases his TRO Motion

solely on his "substance [sic] due process clause" claims. TRO Motion at 4; *see also id.* at 4–8

(making argument). Plaintiff does *not* argue that he is likely to succeed with respect to his other

three claims.

> **A.      Plaintiff is unlikely to succeed on the merits of his substantive due process claim.**

A plaintiff seeking to prove a substantive due process claim in a zoning context bears a

heavy burden.

> Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

The Second Circuit has repeatedly rejected the contention that substantive due process

claimants are "entitled to present to federal courts their disputes concerning the interpretation of

local and state land use regulations." *Natale*, 170 F.3d at 263. Rather,

> Just as federal courts are not to be turned into zoning boards of appeals, *see Village of Belle Terre v. Boraas*, 416 U.S. 1, 13, 39 L. Ed. 2d 797, 94 S. Ct. 1536 (1974) (Marshall, J. dissenting), they are also not to be substituted for state courts as adjudicators of the meaning of zoning and other land use regulations, *see RRI Realty*, 870 F.2d at 918 ("If federal courts are not to . . . substitute for state courts in their state law review of land-use regulatory decisions[], the entitlement test of *Yale Auto Parts* . . . must be applied with considerable rigor.").

*Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999); *see also Clubside, Inc. v.*

*Valentin*, 468 F.3d 144, 157 (2d Cir. 2006) (declining to find a federal protected property interest

---

[19] *Id.* at ¶¶ 87–100 (Third Cause of Action).

[20] *Id.* at ¶¶ 101–14 (Fourth Cause of Action).

because "the cases Clubside relies upon do not explicitly define the scope of a board's discretion or limit the appropriate considerations sufficiently to make the Board's discretion 'so narrowly circumscribed that approval of a proper application is virtually assured.'") (citing *RRI Realty*, 870 F.2d at 918); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 131 (2d Cir. 1998) (expressing sympathy for "plaintiffs' plight" and acknowledging "that plaintiffs were treated shabbily and unfairly" but nonetheless holding no federally protected property interest existed in a zoning determination because doing so "would transform federal courts into zoning boards of appeals" and "contravene the Supreme Court's admonition to delineate [substantive due process] rights only with caution and restraint."); *Stahl York Ave. Co., LLC v. City of New York*, 2015 U.S. Dist. LEXIS 66660, *44–46, 2015 WL 2445071 (S.D.N.Y. 2015) (declining to find clear entitlement in a hardship determination provision that used the word "shall" because such an interpretation "would make the Board nothing more than a rubber stamp and reduce its role in the process to a rote check of whether the proper filings had been made."); *Cunney v. Bd. of Trs. of Grand View*, 56 F. Supp. 3d 470, 494 (N.D.N.Y. 2014) (explaining the viability of plaintiff's substantive due process claim "'turns on the degree to which state and local law *unambiguously limits* the [ZBA's] *discretion* to deny' Plaintiff's . . . application") (citing *Clubside*, 468 F.3d at 154 and *Natale*, 170 F.3d at 263 n.1) (emphasis in original).

Accordingly, to demonstrate a federally protected property interest in a zoning decision, a claimant must show that he or she is strictly and unambiguously entitled to the property interest upon which his claim is based. Plaintiff has not made this showing here with respect to the shooting ranges, berms, or purported farm structures.[21] Furthermore, a claim to a purported

---

[21] Plaintiff does not challenge in the TRO the deconstruction of any other unpermitted structure or improvements installed by Mr. Banyai on the property.

federally protected property interest may be defeated, not only by showing that the permitting authority had discretion over the matter, but also by showing that "uncertainty" exists "as to the meaning of applicable law," circumstances which are both present here. *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

First, Plaintiff argues that the "shooting ranges and the berms constitute a protected property interest as established by [*In re Scheiber*, 168 Vt. 534, 724 A.2d 475 (1998)] and [*In re Laberge Moto-Cross Track*, 2011 VT 1, 189 Vt. 578, 15 A.3d 590 (2011)]." TRO Motion at 6. This argument is premised on the contention that both *Scheiber* and *LaBerge* "declined to order the deconstruction" of an outdoor shooting range and a moto-cross track made of earthen berms. TRO Motion at 6. This argument mischaracterizes the facts and law of both cases.

"Deconstruction" of unpermitted structures was not at issue in either case, and both cases were determined by reference to the specific zoning regulations applicable to the parties. Neither case holds that a person has a strict entitlement to install unpermitted shooting ranges or training facilities on their property.

In *Scheiber*, landowners living in Cabot created and used a shooting range on their property and a neighbor complained to the Cabot zoning administrator. The Cabot zoning administrator, the Cabot Zoning Board of Adjustment, and the Washington Superior Court all found that the shooting range did *not* violate the Cabot zoning regulations. *Scheiber*, 168 Vt. at 535. On appeal, the Vermont Supreme Court reviewed the Washington Superior Court's ruling "for clear error," found none, and affirmed the court's ruling that Cabot's zoning regulations did not reach the challenged use. *Id.* at 539. Because the Town of Cabot never made any attempt to regulate the shooting range at issue, deconstruction was never at issue. *Scheiber* does not prohibit deconstruction of unpermitted structures and does not announce a generally applicable legal right

to install shooting ranges or firearm training facilities on property otherwise subject to local zoning regulations.

In *LaBerge*, the issue was whether the landowners were required to get a conditional use permit under *Hinesburg*'s zoning regulations. The Hinesburg Zoning Administrator and the Hinesburg Development Review Board found that the Hinesburg Zoning Regulations did not require the landowners to obtain a permit. *LaBerge*, 2011 VT 1, P4. Neighbors appealed to the Environmental Court, which found that, under Hinesburg's Zoning Regulations, the track was either a "structure" that required a zoning permit or an "outdoor recreational facility" that required a conditional use permit." *Id* . at ¶ 5. The Vermont Supreme Court interpreted the Hinesburg Zoning Regulations and determined that the private, family-based moto-cross track did not come within the ambit of the Hinesburg Zoning Regulations and therefore did not require a permit. *Id.* at ¶¶ 8–11. The *LaBerge* Court did warn, however, that that the case was marginal and "if use of the track expanded beyond family — certainly if it ever were used by the public — or if landowners chose to increase the track's size or scope, it would likely be more closely considered a structure or a substantial change in use within the meaning of the Zoning Regulations." *Id.* at ¶ 15. Like *Scheiber*, *LaBerge* does not prohibit the deconstruction of unpermitted structures and does not grant an automatic and unfettered right to install a shooting range or to use one's property as an unpermitted firearms training facility.

*Scheiber* and *LaBerge* do not establish that Plaintiff would be entitled to the same ruling under Pawlet's Zoning Regulations or that "the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *RRI Realty Corp. v. Southampton*, 870 F.2d 911, 918 (2d Cir. 1989). Plaintiff has therefore failed to meet his burden of demonstrating a strict entitlement to build an unpermitted shooting range or operate an

unpermitted firearms training facility. These cases do not provide the virtual assurance that the strict entitlement test demands.

Moreover, the Vermont Supreme Court specifically reviewed the arguments Plaintiff makes here and determined that he "is precluded from challenging any of the violations contained in [NOV2]." *Town of Pawlet v. Banyai*, 2022 VT 4, ¶ 40, 216 Vt. 189, 207. In other words, Vermont's highest state court has already indicated that Plaintiff is *not* entitled to the property interest he seeks to assert here because, under applicable state law, he is precluded from claiming it. Because Plaintiff failed to appeal the NOV2, Plaintiff's entitlement to the stated property interest is zero.

Second, Plaintiff asserts that "farm structures" are exempt from Zoning regulations under 24 V.S.A. § 4413(d). TRO Motion at 6. This argument is also unavailing. Plaintiff advanced this "agricultural use" argument during the Environmental Court's post-judgment, post-appeal contempt hearing as a basis for avoiding a contempt finding. The Environmental Court rejected the argument, concluding

> to the extent Respondent testified that it was his belief that the Court's Order did not apply to the "agricultural buildings" on the Property or to buildings with less than 100 square feet without four walls, a roof, and a foundation, the Court finds those arguments similarly untimely, impermissible, and ingenuine. First, as noted above, this litigation has been ongoing since September 2019 and the March 5 Order has been Final since January 14, 2022. Yet, more than a year later, Respondent's only actions with regards to the Court's March 5 Order have been actions to delay or circumvent compliance.
>
> As such, the Court does not find Respondent's assertions of good faith efforts or mistake of law to be credible. Rather, the Court concludes that Respondent's ongoing delay, untimely arguments, and efforts with the school building to be experimentations with ongoing disobedience, further attempts to circumvent Court Orders, and willful contempt.

Contempt Decision at 13–14. Again, the question before this Court is not whether Plaintiff's agricultural use arguments may have had weight if he had appealed the NOV2, but rather,

whether the Environmental Court's Contempt Order represents a violation of Plaintiff's substantive due process rights. Plaintiff's appeal to the agricultural use exemption does not relieve Plaintiff of his obligation to comply with the Environmental Court's Merits Decision, especially when that Decision has been affirmed by Vermont's highest court.

Furthermore, although it was not "critical" to the Court's Contempt Decision, the Environmental Court provided an extensive review of Plaintiff's "farming" argument and concluded, after an evidentiary hearing, that the purported "farm structures" "were likely originally used in association with the firearms training facility/shooting school but have since been repurposed to circumvent the Court's March 5, 2021 Order that they be deconstructed and removed." Contempt Decision at 12–13 n.6.

In any event, the so-called farming exemption, 24 V.S.A. § 4413(d), still requires Plaintiff to "notify a municipality of the intent to build a farm structure and . . . abide by setbacks approved by the Secretary of Agriculture, Food and Markets." 24 V.S.A. § 4413(d)(3). Exemption from permitting is *not* exemption from local regulation. A municipality is allowed to ensure that farming structures comply with the required setbacks and to issue zoning violations if the setbacks are not met; the notice procedure is part of that allowable regulatory mechanism. *In re Appeal of Jacques Tremblay*, Docket No. 173-10-01 Vtec, 2002 Vt. Envtl. LEXIS 58, *4–5 (Vt. Env. Ct. April 11, 2002). Plaintiff's "farming" argument does not provide the strict entitlement contemplated for federally protected property interests in substantive due process claims, particular not where it is undisputed that Plaintiff did not comply with the notice requirements required for the exemption.

As a third argument in support of his likelihood of success, Plaintiff claims that, despite the "powerful effect" of the "finality rule" imposed by 24 V.S.A. § 4472(d), "it is axiomatic that

16

the government may not engage in ultra vires acts." TRO Motion at 8. Plaintiff provides no citation in support of this claim. The argument above, regarding the *res judicata* effect of unappealed final judgments, *see supra* at Section II, is sufficient answer to demonstrate that this unsupported legal argument cannot succeed. NOV2 determined that the property had only a single permitted structure and use for a garage/apartment and that all other existing uses on the property, including the shooting ranges and the firearms training facilities were unpermitted. There is no ground for concluding that these determinations violate any due process, procedural or substantive. Plaintiff had an opportunity to appeal these factual and legal determinations and did not do so. He is therefore precluded from making those arguments here.

Finally, a substantive due process claimant must also demonstrate that the challenged government action was "'arbitrary'" and "'outrageous,'" to the point that it "'shocks the conscience'" and is "'arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the . . . decision.'" *Natale*, 170 F.3d at 262 (citing multiple cases). The 22-page Contempt Order at issue in this TRO Motion was issued after a full evidentiary hearing and includes extensive factual and legal findings. The sanctions imposed by the Contempt Decision, which Plaintiff seeks to enjoin here, are all purgeable, if Plaintiff would comply with the Court's order. The findings and conclusions in the unappealed NOV2 and in the Environmental Court's unappealed Contempt Decision are not arbitrary or capricious and do not approach the "shock the conscience" standard. *E.g., Ceja v. Vacca*, 503 Fed. Appx. 20, 22 (2d Cir. 2012) (City's decision to revoke a Certificate of Occupancy after approving commercial use for decades and after plaintiff expended substantial sums on improvements did not violate due process).

**B.      Plaintiff has not and will not suffer any irreparable harm.**

Plaintiff's claim to irreparable harm is premised entirely on the idea that an allegation of constitutional violation automatically constitutes "irreparable harm." TRO Motion at 9. The purported harm is a violation of Plaintiff's substantive due process rights. As the extensive discussion above shows, Plaintiff has not and cannot demonstrate a substantive due process violation because he has not identified a federal protected property interest. He therefore will not suffer any irreparable harm based on a constitutional violation if the temporary restraining order is not granted.

**C.      The public interest and the balance of the equities do not tip in Plaintiff's favor.**

A movant seeking preliminary injunctions must demonstrate that "the balance of equities tips in his favor and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008). "When the government is a party to the suit, [a court's] inquiries into the public interest and the balance of the equities merge." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021).

Here, a public interest exists in a municipality's ability to enforce its zoning regulations through judicial process and a state court's ability to hold parties accountable to the court's orders through contempt proceedings. It is *not* in the public interest for a federal court to enjoin the Environmental Court's Contempt Decision because such an injunction signals to state court litigants that a state court's orders are merely advisory and that federal courts can be counted on to intercede when a claimant alleges a constitutional violation.

Moreover, the balance of equities do not tip in Plaintiff's favor. The record in this case shows that Plaintiff has repeatedly failed to avail himself of opportunities to seek state remedies to redress the claims he asserts in his TRO Motion and has instead spent his time willfully

avoiding compliance with court orders. The Environmental Court's Contempt Decision gives Plaintiff full opportunity to avoid the potential sanctions he now faces; he need only comply with the Court's directives. If he disagreed with the directives of the Contempt Decision, he could have appealed the Decision to the Vermont Supreme Court. Mr. Banyai took neither path. Instead, he waited until the 11th hour and now asks this Court, on an emergency basis, to give him remedies he did not seek himself and does not deserve under Vermont or Federal law. Given the record of bad faith and willful contempt established in the Court's Contempt Decision, Plaintiff is not in a position to claim the balance of equities in this matter.

Plaintiff argues that the public interest will be "best served by ensuring the constitutional rights of persons within the United States are upheld." TRO Motion at 10 (citing *Coronel*, 449 F.Supp.3d at 287). Plaintiff's claimed public interest in protecting his constitutional rights falls away because Plaintiff has not established that he is likely to succeed on the merits of any of his constitutional claims.

## Conclusion

The Town of Pawlet respectfully requests this Court abstain from deciding Plaintiff's TRO Motion and allow the pending state court proceeding to run its course. In the event the Court determines that *Younger* abstention is inappropriate in this case, the Town respectfully requests this Court deny Plaintiff's TRO Motion on the ground that he is precluded from asserting the arguments advanced in the Motion or, in the alternative, deny the motion on the ground that Plaintiff is not entitled to a preliminary injunction because he has failed to establish that he is likely to succeed on the merits of his claims, has failed to demonstrate irreparable harm, and has failed to show that the public interest would be protected by the injunction and that the balance of equities weigh in his favor.

RESPECTFULLY SUBMITTED this 5th day of June, 2023.

CARROLL, BOE, PELL & KITE, P.C.


BY:/s/: Kevin L. Kite
      Kevin L. Kite, Esquire
      64 Court Street
      Middlebury, VT  05753
      (802) 388-6711
      kkite@64court.com
      *Attorneys for Town of Pawlet*


WOOLMINGTON, CAMPBELL, BENT & STASNY, P.C.


BY:/s/: Merrill E. Bent
      Merrill E. Bent, Esq.
      P.O. Box 2748 (4900 Main Street)
      Manchester Center, VT 05255
      (802) 362-2560
      Merrill@greenmountainlaw.com
      *Attorneys for Town of Pawlet*