```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                     DISTRICT OF VERMONT

DANIEL BANYAI                          :
                                       :
        Plaintiff,                     :
                                       :
        v.                             :   Case No. 2:23-cv-00101
                                       :
TOWN OF PAWLET, JUDGE THOMAS S.        :
DURKIN, and JOHN AND JANE DOE          :
1 through 20, whose identities         :
are unknown at present                 :
                                       :
        Defendants.                    :
```

## OPINION AND ORDER

Plaintiff, Daniel Banyai, has moved the Court to issue a Temporary Restraining Order and Preliminary Injunction prohibiting enforcement of a contempt order against him in the Environmental Division of the Vermont Superior Court. For the reasons set forth below, Plaintiff's motion for a temporary restraining order is **denied.**

## BACKGROUND

This case arises out of a post-judgment contempt action initiated by the Town of Pawlet to enforce the final judgment of the Environmental Division of the Vermont Superior Court issued on March 5, 2021, and affirmed by the Vermont Supreme Court on January 14, 2022, concerning a municipal enforcement action against Mr. Banyai.

Mr. Banyai acquired a 30± acre property in Pawlet, Vermont ("the Property") in 2013. Two years prior, the Town of Pawlet had amended the Town of Pawlet Unified Bylaws to require a 50-foot right-of-way for land-locked parcels proposed for development. In 2017, Mr. Banyai began operating a firearms training facility on the Property, using the business name of "Slate Ridge." Without a zoning permit, Mr. Banyai began erecting structures and outdoor shooting ranges on his property.

In December 2017, Mr. Banyai filed an application for a zoning permit with the Town seeking approval for a "school building." His application was denied on account of his property's non-compliance with the 50-foot right-of-way Bylaw amendment. In April 2018, Mr. Banyai sought a variance for his 30-foot right of way. Following a hearing on the matter, the Town of Pawlet Development Review Board ("DRB") determined that no variance was required because his property was a preexisting nonconforming lot. The DRB therefore advised Mr. Banyai to submit a new permit application for the "school building." Neighboring landowners appealed this decision, but while the appeal was pending, Mr. Banyai acquired a zoning permit for a "school building" on his property. In the course of the neighboring landowners' appeal, the Environmental Division informed Mr. Banyai that the zoning administrator who had issued his permit lacked jurisdiction to do so given the pending status

2

of the appeal, and that his permit was therefore invalid. The Environmental Division ultimately determined that Mr. Banyai's failure to appeal the denial of his initial permit application precluded him from claiming a pre-existing non-conforming lot, and remanded to the DRB for consideration of the variance application. Following a hearing on remand, the DRB denied Mr. Banyai's variance application on July 11, 2019, and Mr. Banyai did not appeal. On August 20, 2019, the Zoning Administrator issued a Notice of Violation ("NOV") to Mr. Banyai informing him of his zoning violations and directing him to cure the violations. Mr. Banyai did not appeal.

Subsequently, the Town of Pawlet filed a zoning enforcement action in the Environmental Division on September 18, 2019, to address the several zoning violations on Mr. Banyai's property including structures and shooting ranges for use in his unpermitted firearms training facility. Following a merits hearing, Judge Durkin of the Environmental Division entered a Decision on the Merits and Judgment Order on March 5, 2021 ("March 5 Order"). The March 5 Order required Mr. Banyai to professionally survey his property, and upon completion of a site plan, to immediately deconstruct and remove all unpermitted structures on his property. The March 5 Order also issued fines at a rate of $100 per day from the date the NOV was issued to the date of the trial on December 16, 2020. Mr. Banyai did not

comply with the March 5 Order, and the Town filed an initial contempt motion on April 21, 2021. On May 3, 2021, Mr. Banyai appealed the March 5 Order under an authorized extension of to file an appeal. The Vermont Supreme Court affirmed the March 5 Order on January 14, 2022.

After the appeal, Mr. Banyai still did not comply with the NOV or March 5 Order. On February 10, 2022, the Town renewed its contempt motion, and the Environmental Division issued another Order ("Interim Order") to compel Mr. Banyai's compliance. Mr. Banyai then complied with several discovery orders and submitted a site map of his property to the Environmental Division following a survey of his land, but as of November 4, 2022, had removed no structures from his property.

On account of Mr. Banyai's continued non-compliance with the NOV, the March 5 Order, and the subsequent Interim Order to compel compliance, the Environmental Division issued a Decision on Post-Judgment Motion for Contempt and Fines ("Post-Judgment Order") on February 8, 2023. The Environmental Division concluded that Mr. Banyai's conduct was in willful disregard of the March 5 Order and held him in contempt of the Court's March 5 Order. Citing Mr. Banyai's "willfulness, perhaps even enthusiasm, for disregarding the Town's Bylaws," his attempts to "obstruct discovery, disregard injunctions, and evade curing the violations of the Town's Bylaw's and . . . Court's Orders

4

enforcing those Bylaws," Judge Durkin concluded that sanctions were warranted. While Judge Durkin declined to impose punitive, nonpurgeable sanctions, he imposed coercive, purgeable sanctions in the amount of $200.000 per day running from January 14, 2022—the date the March 5 Order became final—until such time as the violations have been cured. Judge Durkin provided that this accumulating fine was fully curable if Mr. Banyai remedied the violations in accordance with the compliance schedule provided by the court. Judge Durkin additionally ordered that failure to comply with the terms in the compliance schedule would result in the issuance of a writ of mittimus for the immediate imprisonment of Mr. Banyai. In the event of his imprisonment, the Order permits the Town to enter Mr. Banyai's property and complete the deconstruction and removal of all unpermitted structures.

    Mr. Banyai then filed a motion to reconsider the Post-Judgment Order, which the Environmental Division denied in two written decisions on March 4, 2023 and April 21, 2023. Mr. Banyai has not timely appealed the Post-Judgment Order to any Vermont court. According to Plaintiff, the Post-Judgment Order required Mr. Banyai to remove the school building, shooting ranges, and berm developments from his property by May 25, 2023. Mr. Banyai has not done so. Accordingly, Mr. Banyai may become

5

subject to a writ of mittimus for immediate imprisonment in accordance with the Post-Judgment Order.

## DISCUSSION

Plaintiff's motion requests this Court to enter a temporary restraining order to enjoin enforcement of the Post-Judgment Order of the Environmental Division of the Vermont Superior Court. For the reasons set forth below, Plaintiff's motion for a temporary restraining order is **denied**.

A temporary restraining order "is an extraordinary remedy never awarded as of right." *Winter v. Nat Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also Oeschger v. GeneThera, Inc.*, 395 F. Supp. 3d 345, 355 (D. Vt. 2019) (explaining that the same factors for considering a preliminary injunction apply to temporary restraining orders). When a party seeks a temporary restraining order without written or oral notice to the adverse party or their attorney, the movant must show "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"

and the movant's attorney must "certify[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Plaintiff's motion for a temporary restraining order fails at the first step of the analysis; Mr. Banyai is not likely to succeed on the merits of his claim. This suit challenges rulings that were affirmed by the Vermont Supreme Court and seeks the federal district court's intervention in ongoing state litigation in the Environmental Division of the Vermont Superior Court. Specifically, having failed to find relief in the state judiciary where he unsuccessfully raised several of the arguments asserted in his federal complaint, Plaintiff now asks this Court to enjoin enforcement of the Environmental Division's final Decision on Post-Judgment Motion for Contempt and Fines compelling compliance with the Vermont Supreme Court-affirmed March 5 Order.

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). The doctrine rests on the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." *Exxon Mobil*,

544 U.S. at 283. The Supreme Court has outlined "four requirements for application of *Rooker-Feldman*": (1) the federal-court plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by a state court judgment"; (3) the plaintiff "invite[s] . . . review and rejection of that judgment"; and (4) the state judgment was "rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005).

Plaintiff's suit clearly satisfies each of these elements. Plaintiff lost in state court when the Environmental Division entered the March 5 Order. Plaintiff appealed that loss to the Vermont Supreme Court, where his loss was affirmed by the highest court of the State. Plaintiff's causes of action each allege injuries caused by the state court judgments—the loss of his property and violation of his Second and Fourteenth Amendment rights caused by enforcement of the March 5 Order and Post Judgment Order. Raising several arguments that he has already unsuccessfully raised in state court, Plaintiff's suit alleges that the Defendants, including Judge Durkin of the Environmental Division, interpreted the NOV in bad faith and have "selectively enforced" the Town's bylaws in violation of his constitutional rights. Consideration of these arguments requires this Court to review, and hypothetically reject, Judge Durkin's reasoning in both the March 5 Order and Post-Judgment

Order. Both of these Orders, in addition to the Vermont Supreme Court's affirmation of the March 5 Order, were rendered before Plaintiff filed suit in this District.

As this Court does not sit as a court of appeals for the state courts, *see Skinner v. Switzer*, 562 U.S. 521, 532 (2011), this Court lacks appellate jurisdiction over the Plaintiff's claims against the Defendants under the *Rooker-Feldman* doctrine. Plaintiff is therefore unable to demonstrate his likely success on the merits of his claim.

Furthermore, the *Younger* doctrine necessitates this Court's abstention from interfering in the state court's civil contempt process. "[F]ederal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). In "certain instances," however, "the prospect of undue interference with state proceedings counsels against federal relief." *Id.* In *Younger v. Harris*, the Supreme Court reviewed the power of federal courts to consider criminal cases pending in state court and concluded that federal abstention is required where there is a parallel state criminal proceeding. *Id.* The Supreme Court has extended *Younger* abstention beyond criminal proceedings and instructed that abstention is warranted in "particular state civil proceedings that are akin to criminal prosecutions . . . or that implicate a State's interest in enforcing the orders and judgments of its

9

courts." *Sprint Commc'ns, Inc.*, 571 U.S. at 72-73. *Younger* abstention therefore recognizes three circumstances in which a federal district court should abstain: "(1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their functions." *Id.* at 78.

    A civil contempt order falls neatly into the third category of circumstances in which a federal district court must abstain. The Supreme Court has instructed that federal courts should not interfere in state court proceedings "in which the State's contempt process is involved" because the contempt process "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1997); *see also Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019). "A State's interest in the contempt process," the Supreme Court said, "through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest" that should be protected from federal court intrusion. *Juidice*, 430 U.S. at 335.

    The Supreme Court has noted that *Younger* abstention is inapplicable to "those cases where the District Court properly

10

finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith . . . ." *Id.* at 338. To make a showing of bad faith or harassment, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

The Court finds no evidence that the Town of Pawlet acted in bad faith by bringing state proceedings to enforce the NOV or to hold Mr. Banyai in contempt of court. Mr. Banyai's complaint asserts that the Defendants to this case—the Town, Judge Durkin, and other unnamed individuals—have interpreted the NOV in bad faith by expanding its application to structures that are either inapplicable or exempt under Vermont Law. Mr. Banyai was first notified of his obligation to cure the zoning violations on his property in August of 2019, nearly four years prior to bringing this case in federal court. Since that time, the Town of Pawlet has obtained success on the merits of their enforcement action in the Environmental Division and the Vermont Supreme Court. Nonetheless, Mr. Banyai has taken minimal steps to comply with several court orders requiring that he bring his property into compliance with the Pawlet Bylaws, including by removal of the structures he now argues are outside the scope of the NOV. Accordingly, the record offers only evidence that the contempt proceedings in the Environmental Division were brought in a good

11

faith effort to obtain compliance with the NOV and March 5 Order.

Moreover, to the extent that the Plaintiff attacks the judgment of the Environmental Division as a bad faith interpretation of the NOV, the Court concludes that the Plaintiff's allegations are insufficient to establish a finding of bad faith under *Younger* that would set aside this Court's duty to abstain. *See Pervu v. City of Oneonta*, No. 619CV00861MADTWD, 2020 WL 1643392, at *7 (N.D.N.Y. Apr. 2, 2020) (finding allegations that a judgment was "jurisdictionally defective" were "too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith" (citation omitted)).[1] The sanctions imposed against Mr. Banyai in the most recent Post-Judgment Order are not punitive in nature. The Town of Pawlet requested and the Environmental Division imposed fines specifically designed to compel compliance with the March 5 Order and that were purgeable upon the removal of all unpermitted structures on the property by the deadlines set out in the court-ordered compliance schedule. The use of

---

[1] Plaintiff's complaint attacks Judge Durkin's Orders as bad faith interpretations of the NOV in violation of Plaintiff's constitutional rights. However, Judge Durkin's actions in this case were taken in his judicial capacity. It is a well-settled principle that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts." *Stump v. Sparkman*, 435 U.S. 349 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335 (1871). Absolute judicial immunity is an immunity from suit that is not overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Accordingly, Judge Durkin is immune from this suit.

imprisonment as a sanction is conditioned on the failure to meet the deadlines of the compliance schedule. Each of these sanctions appear to be the product of a carefully-reasoned assessment by Judge Durkin of the measures necessary to secure compliance with the NOV and March 5 Order and offer no suggestion of harassment or bad faith by any Defendant. Consequentially, the Court finds that the bad faith exception to *Younger* abstention does not apply. Therefore, the Court must abstain from interjecting in the state court's civil contempt proceedings against the Plaintiff.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a temporary restraining order is **denied.**

DATED at Burlington, in the District of Vermont, this 5th day of June, 2023.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge