UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

DANIEL BANYAI                          :
                                       :
          *Plaintiff*,                 :
                                       :
     v.                                :    Case No. 2:23-cv-00101
                                       :
TOWN OF PAWLET, JUDGE THOMAS S.        :
DURKIN, and JOHN AND JANE DOE          :
1 through 20, whose identities         :
are unknown at present                 :
                                       :
          *Defendants*.                :

## OPINION AND ORDER

Plaintiff, Daniel Banyai, has filed this action against Defendants Town of Pawlet, Judge Thomas S. Durkin, and others for alleged constitutional violations arising out of a multi-year litigation in Vermont state court concerning the Plaintiff's zoning violations. Defendants Town of Pawlet and Judge Thomas S. Durkin have moved to dismiss the Plaintiff's complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiff subsequently filed a motion to amend the complaint. For the reasons set forth below, Defendants' motions to dismiss are **granted**, and Plaintiff's motion to amend the complaint is **denied**.

## BACKGROUND

Plaintiff has been the subject of a zoning enforcement action brought by the Town of Pawlet against the Plaintiff that

is currently before Judge Durkin, a Vermont Superior Court judge assigned to the Environmental Division. Mr. Banyai owns a 30± acre property in Pawlet, Vermont ("the Property") on which he has been operating a firearms training facility since 2017 under the business name of "Slate Ridge." ECF 1 at 5, ¶ 20. In December 2017, Mr. Banyai filed an application for a zoning permit with the Town seeking approval for a "school building" for Slate Ridge, which he started constructing 2017. ECF 11 at 5, ¶ 21. His permit application was denied due to his property's non-compliance with a right-of-way Bylaw amendment, and Mr. Banyai did not appeal ("January 2018 Denial"). ECF 1 at 6, ¶ 23.

In April 2018, Mr. Banyai applied to the Town of Pawlet Development Review Board ("DRB") for a variance from the right of way requirement. ECF 1 at 6, ¶ 26. The DRB determined that no variance was required because his property was a pre-existing nonconforming lot. ECF 1 at 7, ¶ 30. The DRB therefore advised Mr. Banyai to submit a new permit application for the "school building." Neighboring landowners appealed this decision, but while the appeal was pending, Mr. Banyai acquired a zoning permit for a "school building" on his property ("June 2018 Permit") after the Zoning Administrator issued a notice of violation ("NOV1") to the Plaintiff regarding the unpermitted construction of the building. ECF 1 at 7-8, ¶¶ 31-32. The Environmental Court determined that the January 2018 Denial

precluded Mr. Banyai from raising the pre-existing non-conforming parcel argument, and remanded to the DRB with instructions to consider the merits of the variance. ECF 1 at 8, ¶ 35. On remand, the DRB denied Mr. Banyai's variance application; Mr. Banyai did not appeal. *Id.*

Subsequently, the Town's Zoning Administrator issued a second notice of violation to Mr. Banyai on August 29, 2019 ("NOV2") requiring Mr. Banyai to remove all unpermitted uses and structures on the property. ECF 1 at 9, ¶ 37. Mr. Banyai did not comply with NOV2, nor did he appeal NOV2 to the DRB. ECF 1 at 9, ¶ 38-41.

In September 2019, the Town filed an application to enforce NOV2 in the Environmental Court. ECF 1 at 9, ¶ 42. In the course of the enforcement action, Judge Durkin of the Environmental Court informed Mr. Banyai that the Zoning Administrator who had issued the June 2018 permit lacked jurisdiction to do so given the pending status of the appeal, and that the permit was therefore invalid. *Id*. Following an evidentiary hearing, Judge Durkin entered a Decision on the Merits and Judgment Order on March 5, 2021 ("March 5 Order"). ECF 1 at 10, ¶ 43. The March 5 Order required Mr. Banyai to professionally survey his property, and upon completion of a site plan, to immediately deconstruct and remove all unpermitted structures on his property. ECF 1 at 10, ¶ 44. The March 5 Order also issued fines

at a rate of $100 per day from the date NOV2 was issued to the date of the trial on December 16, 2020. ECF 1 at 11, ¶ 45.

Mr. Banyai did not comply with the March 5 Order, and the Town filed an initial contempt motion on April 21, 2021. On May 3, 2021, Mr. Banyai appealed the March 5 Order under an authorized extension to file an appeal. ECF 1 at 11, ¶ 46. The Vermont Supreme Court affirmed the March 5 Order on January 14, 2022. ECF 1 at 11, ¶ 47.

After the appeal, Mr. Banyai still did not comply with NOV2 or the March 5 Order. On February 10, 2022, the Town renewed its contempt motion. After several hearings, Judge Durkin issued a Decision on Post-Judgment Motion for Contempt and Fines ("Contempt Order"), imposing curable fines to compel compliance with the March 5 Order and explaining that failure to comply may result in Mr. Banyai's imprisonment until such time as the violations on the property are cured. ECF 1 at 12. ¶ 53. Mr. Banyai moved the Environmental Court to reconsider the Contempt Order, which Judge Durkin denied in an Order dated March 3. ECF 1 a3, ¶ 56. Mr. Banyai did not timely appeal.

The controversy before this Court follows the post-judgment contempt action concerning the municipal action against Mr. Banyai and enforcing the notice of violation against him. Instead of complying with the Environmental Court's several orders, Plaintiff has turned to the federal court for relief.

4

Plaintiff raises four claims against Judge Durkin and the Town of Pawlet under 42 U.S.C. § 1983: (1) violation of the Equal Protection Clause of the Fourteenth Amendment for selective prosecution; (2) violation of the Equal Protection Clause for differential treatment; (3) violation of the Due Process Clause of the Fourteenth Amendment for deprivation of his property interests; and (4) Second Amendment violations. ECF 1 at 13-19. Plaintiff asks the Court to overturn the March 5, 2021 merits decision, reinstate the June 2018 Permit, and bar enforcement of all subsequent orders against him enforcing that decision. ECF 1 at 20.

As part of his initial filing, Plaintiff filed a motion for a Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction (ECF 2), which this Court denied (ECF 11). Defendants Judge Durkin and Town of Pawlet now move the Court to dismiss the complaint in its entirety, and Plaintiff has requested leave to amend the Complaint.

Defendant Judge Durkin moves the Court to dismiss Plaintiff's complaint on the basis of judicial immunity and the *Rooker-Feldman* and *Younger* abstention doctrines. Defendant Town of Pawlet argues that the abstention doctrines and claim preclusion bar Plaintiff's complaint. For the reasons set forth below, Defendants' motions to dismiss are **granted**, Plaintiff's

motion to amend is **denied**, and the complaint is dismissed in its
entirety.

## Legal Standard

"[W]hen ruling on a defendant's motion to dismiss, a judge
must accept as true all of the factual allegations contained in
the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and
"draw[ ] all reasonable inferences in favor of the plaintiff,"
*Daniel v. T & M Prot. Res., Inc.*, 992 F.Supp.2d 302, 304 n.1
(S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d
141, 145 (2d Cir. 2012)). The Court owes no deference, however,
to Plaintiff's legal conclusions; the Court is "not bound to
accept as true a legal conclusion couched as a factual
allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (cited
with approval in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007)).

To survive a Rule 12(b)(6) motion to dismiss, a pleading
"must contain sufficient factual matter, accepted as true, to
'state a claim for relief that is plausible on its face.'"
*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see
also* Fed. R. Civ. P. 8(a)(2). "The plausibility standard is not
akin to a 'probability requirement,' but it asks for more than a
sheer possibility that a defendant has acted unlawfully." *Iqbal*,
556 U.S. at 1949 (quoting *Twombly*, 550 U.S. at 556). The Court
must also draw all reasonable inference in favor of the non-

moving party, but set aside all conclusory allegations and legal assertions. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).

Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

In the Rule 12(b)(1) context, the Court may refer to evidence outside the pleadings. *Zappia Middle E. Constr. Co. Ltd. V. Emirate of Abu Dhabi*, 215 F.3d 247, 254 (2d Cir. 2000). Under Rule 12(b)(1), the "plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 499 (S.D.N.Y. 206) (citing *Makarov v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). This is in contrast to the 12(b)(6) context, where the movant bears the burden. *Feldheim v. Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 365 (S.D.N.Y. 2017). ("This allocation of the burden of proof is the only substantive difference between the standards of review under these two rules." (internal quotation omitted)).

For a complaint to survive a motion to dismiss at this stage of litigation, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570 (2007)).

## I.   Defendant Judge Durkin's Motion to Dismiss on account of Judicial Immunity

"[I]t is a general principle of the highest importance to

the proper administration of justice that a judicial officer, in

exercising the authority vested in him, shall be free to act

upon his own convictions, without apprehension of personal

consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 11

(1991). The well-settled principle of judicial immunity avows

that "judges of courts of superior or general jurisdiction are

not liable to civil actions for their judicial acts." *Stump v.

Sparkman*, 435 U.S. 349 (1978) (quoting *Bradley v. Fisher*, 80

U.S. 335 (1871)). "The cases indicate that the federal common

law on judicial immunities applies even to state officials when

they are sued in federal court on federal claims." *Gross v.

Rell*, 585 F.3d 72, 80 (2d Cir. 2009).

Judicial immunity applies to a judge's judicial conduct,

i.e., actions made in their judicial capacity. *Mireles*, 502 U.S.

at 11. A judge's actions "taken in the complete absence of all

jurisdiction," or made in their personal or administrative

capacity do not benefit from judicial immunity. *Id.*

Plaintiff's complaint takes issue with Judge Durkin's

judicial actions. The Complaint alleges constitutional

violations arising from state court orders resolving the municipal zoning dispute before Judge Durkin in his judicial capacity as a Vermont Superior Court judge assigned to the Environmental Division. Accordingly, Plaintiff's complaint includes no plausible claim against Judge Durkin that survives judicial immunity as each claim relates to matters within the jurisdiction of the Environmental Division of the Vermont Superior Court. *See, e.g.*, 4 V.S.A. §§ 30, 34. Accordingly, the Court finds that Judge Durkin is immune from this suit and **grants** Defendant Judge Durkin's motion to dismiss.

## II.  The Town of Pawlet's Motion to Dismiss on account of Lack of Subject Matter Jurisdiction under the *Rooker-Feldman Doctrine*

The Court next turns to Defendant Town of Pawlet's Rule 12(b)(1) motion to dismiss for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine. "Because *Rooker-Feldman* goes to subject-matter jurisdiction," *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)*,* "[a] motion to dismiss based on the abstention doctrine is . . . considered as a motion made pursuant to Rule 12(b)(1)." *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341-42 (E.D.N.Y. 2008).

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home*

*Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)). The *Rooker-Feldman* doctrine rests on the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." *Exxon Mobil*, 544 U.S. at 283.

The Supreme Court has made clear, however, that *Rooker-Feldman* occupies a "narrow ground" that applies in only "limited circumstances." *Exxon-Mobil*, 544 U.S. at 284, 291. Application of the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. To ensure that courts "avoid extending *Rooker-Feldman* beyond the narrow circumstances in which it properly applies," *Hunter v. McMahon*, No. 21-1473, 2023 WL 4671281, at *4 (2d Cir. July 21, 2023), the Second Circuit applies a four-part test to assess application of the doctrine.

> *Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

*McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).

Here, Plaintiff has lost in state court on several occasions, and no state-court appeal was pending when this suit was filed. The Second Circuit has explained that "state court proceedings must have either reached finality or yielded an order that satisfies 'the exceptions to the finality requirement' … [that] trigger the exclusive appellate jurisdiction of the Supreme Court." *Hunter*, No. 21-1473, 2023 WL 4671281 at *5 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 612 (1989)). In other words, "[p]roceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum." *Mothershed v. Justs. Of the Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005). In the Second Circuit, *Rooker-Feldman* has applied where "the plaintiffs filed the present action" after the time to appeal the state-court decision had passed without timely appeal, "and therefore it appear[ed] that the state-court proceedings had ended." *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 38 & n.2 (2d Cir. 2021); *see also Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 612 (2d Cir. 2020) (same).

In this case, Plaintiff is subject to several final state-court judgments. Plaintiff first lost in the Environmental Court in the appeal of the DRB's finding that his property was a pre-existing non-conforming lot. ECF 1 at 8, ¶ 35. The Environmental

Court held that the initial denial of Mr. Banyai's January 2018 permit application precluded him from raising the argument that his property was a pre-existing nonconforming lot. Plaintiff did not appeal that decision, and thus it was final. Plaintiff then lost in the Environmental Court after the Town of Pawlet filed an action to enforce NOV2. In the March 5, 2021 decision on the merits following an evidentiary hearing, Judge Durkin entered a declaratory judgment in favor of the Town, voiding the June 2018 permit, ordering the removal of all "buildings" on Mr. Banyai's property that were not authorized by a valid zoning permit, and enjoining Mr. Banyai from operating a shooting school on his property. ECF 1-1. Mr. Banyai timely appealed the March 5 Decision to the Vermont Supreme Court, where his loss was affirmed. *Town of Pawlet v. Banyai*, 2016 Vt. 189, 193 (2022). The March 5 Order is therefore final.

Most recently, Plaintiff lost in the Environmental Court during the Town's contempt proceedings against him after he refused to comply with the March 5 Order; Mr. Banyai lost during the Town's action for contempt and fines, (ECF 1-2) and again on his motion to have the Contempt Order reconsidered (ECF 11 at 5). Plaintiff did not timely appeal these Contempt Decisions, and thus they are final.

Each of these final judgments were rendered against the Plaintiff before he filed suit in this District. Accordingly,

Plaintiff's present action meets the first and fourth elements of *Rooker-Feldman*, that the federal court plaintiff lost in state court prior to the commencement of plaintiff's federal suit. *Hoblock*, 422 F.3d at 85.

Each of Plaintiff's claims additionally meet the third *Rooker-Feldman* requirement: that the plaintiff invite district court review of the state-court's judgment. *Id*. Plaintiff asks the Court to terminate the permanent injunction against his property prohibiting any firearms-related activity; to revoke NOV2, which both the Environmental Court and Vermont Supreme Court found valid; to reinstate the June 2018 permit that the March 5 Order invalidated; and to enjoin the state court from enforcing the Contempt Order. ECF 1 at 20. To find for Plaintiff, this Court must review and set aside the March 5 Order, the Vermont Supreme Court's decision affirming that order, the Contempt Order, and the denial of Plaintiff's request for reconsideration of the Contempt Order. Thus, each of Plaintiff's claims meet the third requirement for *Rooker-Feldman* applicability.

Assessment of the second element of *Rooker-Feldman* applicability requires analysis of each of Plaintiff's claims. To satisfy the second element of the Second Circuit's *Rooker-Feldman* test, the Court must find that "the plaintiff complains of injuries caused by the state court judgment[s]." *McKithen*,

626 F.3d at 154. As the Court recently reiterated in *Hunter*, this requirement is "core" to the *Rooker-Feldman* requirements. No. 21-1473, 2023 WL 4671281 at *6 (internal quotations omitted). The Second Circuit has outlined a "formula" to "guide [this] inquiry: a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (quoting *Hoblock*, 422 F.3d at 88 (emphasis added)). "*Rooker-Feldman* does not bar claims based on opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) (internal quotation marks omitted an emphasis added). Thus, for *Rooker-Feldman* to jurisdictionally bar a case, there must be a "*causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *Hunter*, No. 21-1473, 2023 WL 4671281 at *7 (quoting *McKithen*, 481 F.3d at 98).

In *Hunter*, the Second Circuit held that certain claims did not satisfy the causal-relationship requirement. *Hunter* concerned a custody dispute in which a mother's parental rights over her minor son were terminated in state court proceedings. Prior to the commencement of the state court proceedings, Child

Protective Services took custody of the minor child. The Second
Circuit explained that because Hunter alleged that "some of the
defendants conspired—before any decisions were issued by the
family court—to discriminate against her on the basis of race,
to conduct unlawful searches and seizures, and to defame her,
among other claims," and took custody over her son before the
commencement of the family court proceedings, the "state-court
judgment did not *produce* this alleged earlier-in-time conduct,
though it may have adjudicated the legitimacy of the conduct
after the fact." *Id*. For these reasons, the Court held that even
if the first element of *Rooker-Feldman* had been met, which it
was not, then *Rooker-Feldman* failed at the second step.

In this case, Plaintiff's first claim alleges selective
enforcement of Pawlet zoning regulations in violation of the
Equal Protection clause. Specifically, this claim alleges that
all Defendants—including the Town of Pawlet and Judge Durkin—
"failed to interpret NOV2 in good faith," "sought to expand the
scope of NOV2," "unlike other similarly situated persons, [ ]
refused to provide reasonable accommodations to Plaintiff," and
"sought to compel Plaintiff, under threat of incarceration, to
remove his shooting ranges," all "in violation of Plaintiff's
constitutional rights." ECF 1 at 13-14, ¶¶ 61-71.

Plaintiff's claim for selective enforcement is distinct
from the claims at issue in *Hunter* that predated the state-court

15

action. First, Plaintiff has named Judge Durkin as a Defendant in this claim, making clear that the Plaintiff views Judge Durkin's state-court judgments as a source of his injuries. Second, none of Plaintiff's alleged injuries occurred prior to the commencement of the action, but rather the state-court judgments themselves produce his injuries. Plaintiff's Response in Opposition to the Motions to Dismiss argues that his injuries "were sustained by the Town's motivations for issuing the NOV," and that the Environmental Court simply ratified the Town's issuance, interpretation, and enforcement of the NOV. ECF 16 at 14. But Plaintiff's pleadings do not align with this argument. To the contrary, Plaintiff's first cause of action does not challenge NOV2 on its own terms, but rather alleges that the Defendant's interpretation of NOV2 unlawfully expanded its scope. ECF 1 at 13-15. In particular, the first claim takes issue with the state-court's conclusions regarding what structures on his property fall under the scope of the NOV and the measures the state court deemed necessary to compel compliance with the March 5 Order. While NOV2 predated the state court's role in this dispute, Plaintiff's first claim does not allege that NOV2 caused his injuries. Rather, the first claim specifically identifies Judge Durkin's and the Town's "expansion" of NOV2, which occurred once the state-court action was commenced, as the source of his injuries. Accordingly, there

is a direct, causal relationship between Judge Durkin's March 5 Order and Contempt Order and Plaintiff's alleged injuries. The Court therefore finds that Plaintiff's first claim satisfies the second element of *Rooker-Feldman* application.

Plaintiff's second claim for violation of the Equal Protection Clause alleges that all Defendants "intentionally treated [Plaintiff] differently from other similarly situated individuals due to the nature of his intended operations – namely, firearms related training and education." Plaintiff alleges that each of the Defendants, including Judge Durkin and the Town, "seek to compel Plaintiff under threat of incarceration to remove" structures on his property. ECF 1 at 15-16, ¶¶ 73-83. Specifically, Plaintiff alleges that the structures which the state court is compelling him to remove, including shooting ranges and farming structures, are protected by his right to bear arms and farming exemptions from local zoning regulations. Judge Durkin's March 5 Order held that these structures fall under NOV2. Judge Durkin's Contempt Order imposes fines and opens an avenue for incarceration to compel compliance with the March 5 Order. Accordingly, Plaintiff's claim directly alleges that the Court's decisions are "ultra vires" and have been made "under color of law and in violation of Plaintiff's constitutional rights." Again, Plaintiff does not challenge the NOV itself, but challenges the state-court's

17

interpretation of the NOV, which Plaintiff argues is over
expansive and unconstitutional. Defendant's injuries complained
of in his second claim, therefore, were *produced* by the state-
court judgment.

Plaintiff's third cause of action alleges that all
Defendants violated the Due Process Clause of the Fourteenth
Amendment by arbitrarily depriving him of his property
interests. Plaintiff alleges that "Defendants voided the June
2018 Permit in violation of the law," and threaten incarceration
to compel removal of his shooting ranges and farming structures.
According to Plaintiff, these deprivations of his property
occurred "when the Defendants wrongfully (a) voided the June
2018 Permit and (b) ordered the destruction and removal of the
shooting ranges, berms, and farming structures under threat of
incarceration." ECF 1 at 17, ¶ 92. Judge Durkin's March 5 Order
voided the June 2018 Permit, and Judge Durkin's Contempt Orders
employ potential incarceration as a tool to compel Mr. Banyai's
compliance with the March 5 Order.

In the Second Circuit, "whatever the full import of the
'caused by' and 'produced by' language, at least the following
is evident: a party is not complaining of an injury 'caused by'
a state-court judgment when the exact injury of which the party
complains in federal court existed prior in time to the state-
court proceedings, and so could not have been 'caused by' those

proceedings." *McKithen*, 481 F.3d at 98. Accordingly, Plaintiff's alleged deprivation of his property interests complained of in the third cause of action—i.e. the voiding of the June 2018 permit and the court-ordered destruction and removal of structures on his property—occurred after the state-court proceedings commenced and are causally related to the state-court judgments. Thus, Plaintiff's third cause of action meets the *Rooker-Feldman* requirement for a causal relationship between the state-court judgment and the injury complained of in federal court.

Plaintiff's Fourth Cause of Action alleges that Defendants violated the Second Amendment by "restraining and prohibiting the Plaintiff from operating a shooting range on his property." Unlike the first three claims, this claim alleges injuries that do predate the commencement of the state-court proceedings. Plaintiff's fourth cause of action specifically targets the Town of Pawlet's zoning decision as issued in NOV2. Plaintiff's complaint alleges that NOV2 held Plaintiff in violation of the Pawlet Unified Bylaws Article VIII for "operating a training facility/shooting school" and required him to "eliminate the unpermitted uses on the property . . . and not allow unpermitted uses to resume on the property." ECF 1 at 9, ¶ 37. While the state-court judgments enforce NOV2, the harm complained of in this claim occurred when NOV2 was first issued prior to the

state-court judgments. Any permanent injunction "restraining Plaintiff from engaging in any firearms related training activities on the Property" merely "ratified" NOV2. Thus, the injury in this case predates the commencement of the state-court action. Accordingly, this Court does not lack subject matter jurisdiction to evaluate the Plaintiff's fourth cause of action.

For these reasons, the Court concludes that *Rooker-Feldman* bars this Court from asserting subject matter jurisdiction over the first three claims in Plaintiff's complaint. The Court accordingly dismisses these claims for lack of subject matter jurisdiction.

## III.  The Town of Pawlet's Rule 12(b)(6) Motion to Dismiss on Claim Preclusion Grounds

Defendant Town of Pawlet additionally moves the Court to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) on claim preclusion grounds.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply Vermont claim preclusion law to Vermont state court judgments." *Demarest v. Town of Underhill*, No. 22-956, 2022 WL 17481817, at *2 (2d Cir. Dec. 7, 2022); *see also Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984). "The res judicata effect of state-court decisions in § 1983 actions is a matter of state law." *Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994) (internal citations omitted).

In Vermont, claim preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter, and causes of action are identical or substantially identical." *In re Burns 12 Weston St. NOV*, 2022 VT 37, ¶ 13. In other words, claim preclusion acts as a bar to litigation if "(1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *Iannarone v. Limoggio*, 190 Vt. 272, 279 (2011) (quoting *In re St. Mary's Church Cell Tower*, 180 Vt. 638, 638 (2006)). The doctrine "bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action." *Grundstein v. Vt. Bd. of Bar Examiners*, No. 21-1549, 2022 WL 1669459, at *1 (2d Cir. May 26, 2022) (summary order) (quoting *Carlson v. Clark*, 185 Vt. 324, 330 (2009)).

Plaintiff does not dispute that this action meets the first and second elements of claim preclusion: that this case involves several final judgments on the merits in past state litigation between Mr. Banyai and the Town of Pawlet. Plaintiff contends, however, that he did not and could not have litigated his 42 U.S.C. § 1983 claims in the prior action, and therefore claim preclusion does not bar his claims.

"Vermont applies a transactional test to determine if the subject matter and cause of action are the same in both cases." *Grundstein*, No. 21-1549, 2022 at *2 (2d Cir. May 26, 2022) (summary order) (citing *Faulkner v. Caledonia Cnty. Fair Ass'n*, 178 Vt 51, 56 (2004)). "The subject matter and causes of action are thus considered the same if the operative facts are the same." *Id.* The court considers "whether the same evidence will support both" causes of action, *Demarest v. Town of Underhill*, 2021 Vt 14, ¶ 13 (quoting *Faulkner*, 178 Vt. at 57), "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understand or usage," Restatement (Second) of Judgments § 24.

Under the transactional test, the Court concludes that each of Plaintiff's claims in this federal case arise out of the same set of operative facts as those underlying the state court judgments against Mr. Banyai. Both the state and federal cases concern the Zoning Administrator's issuance of the appealed NOV1, the June 2018 Permit, the unappealed NOV2, and the Town's lawsuit to enforce NOV2. ECF 1 at ¶¶ 17-56. While the four causes of action in Plaintiff's federal complaint were not brought during the proceedings in the Vermont Environmental Court, each cause of action asks the Court to draw legal conclusions that are contrary to judgments rendered in the prior

litigation. Plaintiff claims that the June 2018 permit is legally valid, that NOV2 does not apply to his training facilities, and that use of his training facilities and farming structures on his property complies with the March 5 Order. The March 5 Order, Vermont Supreme Court decision, and Contempt Order, however, definitively settled these issues against Mr. Banyai. In particular, the Vermont Supreme Court held:

> landowner has only one valid permit, the October 2018
> Permit for a garage/residential apartment, and his
> current school improvements and uses of his property
> are violations of the Bylaws; by failing to appeal
> NOV2, he is precluded from arguing his uses detailed
> in the notice of violation are either not subject to
> the Bylaws or in conformance with the Bylaws, and from
> relying on the June 2018 Permit.

*Banyai*, 216 Vt. 189, 198 (2022). The Court finds each of Plaintiff's claims concerning the validity of the June 2018 permit and the scope of NOV2 to have been settled by prior litigation. Accordingly, this action is the "same or substantially identical" for claim preclusion purposes. *Faulkner*, 127 Vt. at 57.

Nonetheless, Plaintiff asserts that the Town cannot meet the third element because Plaintiff's 42 U.S.C. § 1983 claims were not and could not have been fully litigated in the prior litigation on account of the limited jurisdiction of the Environmental Court. The Court determines that Plaintiff's

constitutional questions are within the purview of the jurisdiction of the Environmental Court.

Under 24 V.S.A. 4472(a), an appeal to a superior court is "the exclusive remedy of an interested person with respect to any decision . . . under this chapter." Under subsection (d), all parties are bound by a board decision in absence of an appeal, and "shall not thereafter context, either directly or indirectly . . . such decision of the board in any proceeding." Accordingly, the Vermont Supreme Court has held that a "plaintiff's exclusive remedy to attack the board decision [is] to appeal and failure to do so forecloses further review." *Hinsdale v. Vill. of Essex Junction*, 153 Vt. 618, 625 (1990). The Supreme Court has further explained that while 24 V.S.A. 4472(b) "allows [a] plaintiff to attack the constitutionality of a provision of the zoning ordinance [in a separate action]; it does not authorize a constitutional attack on the application of the ordinance to [their] particular facts." Such an attack, the Court held, must be done in the appeal, not through "collateral attack." *Id.*

Each of Plaintiff's four claims against the town raise a constitutional attack to the application of the Town's Bylaws to his property. He alleges selective enforcement and differential treatment in violation of the Equal Protection Clause, deprivation of his property interests in violation of the Due

Process Clause of the Fourteenth Amendment, and denial of his right to operate a shooting range on his property in violation of the Second Amendment. Each of these claims are properly raised in the Environmental Court on an appeal of the issuance of the notice of violation against him, which he chose not to pursue. *See*, *e.g.*, *In re Letourneau*, 168 Vt. 539, 548 (1998); *Down River Invs. LLC CU*, No. 139-12-18 VTEC, 2020 WL 98120000, at *7 (Vt. Super. June 30, 2020); *Town of Charlotte v. Aube-Hinsdale*, No. 77-4-00VTEC, 2001 WL 35959870 (Vt. Envtl. Ct. Aug. 10, 2001) ("Defendant argues that the zoning bylaws are being selectively enforced in her neighborhood."). Accordingly, Plaintiff could and should have litigated his present claims in the Environmental Court in an appeal of the issuance of NOV2 or during the Town's enforcement action against him.

Plaintiff further cites to *Littlefield v. Town of Colchester* for the premise that 24 V.S.A. § 4472 does not bar a Plaintiff from bringing a separate action for unconstitutional deprivation of property under 42 U.S.C. § 1983 instead of bringing the claim during an appeal of a zoning decision. 150 Vt. 249, 250 (1988). In that case, however, the Vermont Supreme Court determined that because the Plaintiff had previously voluntarily dismissed his appeal with prejudice, which is "treated as an adjudication on the merits," the Plaintiff could "no longer allege—by virtue of his voluntary dismissal with

25

prejudice—the injury necessary to make out a damages claim under 42 U.S.C. § 1983" because that issue had already been settled against him. *Id.* at 251. Thus, while 24 V.S.A. § 4472 does not bar a separate action for damages under 42 U.S.C. § 1983, the doctrine of claim preclusion stands in the path of a plaintiff who brings their § 1983 claim after losing on the merits of their prior zoning appeal.

Finally, Plaintiff argues that claim preclusion is inapplicable to this case because Vermont Rule of Civil Procedure 60(b) permits the Plaintiff to file this independent action to seek relief from the final judgments against him on account of misconduct by the Town. The Vermont Rules of Civil Procedure govern the procedure in the Civil and Criminal Divisions of the Superior Court and in the Judicial Bureau of the State of Vermont. Vt. R. Civ. P. 1. They have no application in this Court. Plaintiff's action, therefore, is not made under Rule 60(b) of the Vermont Rules of Civil Procedure. And, even if the rule was applicable in this Court, it would not permit Plaintiff to evade the preclusive effect of res judicata in this case. *See Cody v. Estate of Cody*, 134 Vt. 113, 114 (1976).

In sum, the Court concludes that Plaintiff's constitutional claims "could have been fully litigated in the prior proceeding." *Iannarone v. Limoggion*, 190 Vt. 272, 279 (2011). As each of Plaintiff's claims against the Town of Pawlet meet the

requirements for claim preclusion, the Court finds that Vermont claim preclusion law bars Plaintiff's present action against the Town in its entirety. Accordingly, the Town's 12(b)(6) Motion to Dismiss is **granted.**[1]

## IV.   **Plaintiff's Motion to Amend the Complaint**

Finally, Plaintiff has moved to amend his Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Under Rule 15(a)(2), a party may amend their pleading with the Court's leave, which the Court "should freely give when justice so requires." In this case, Plaintiff's request for leave to amend his complaint has proven futile. Plaintiff's motion concedes that the "proposed amendment does not directly affect the contents of the Town's pending motion to dismiss." ECF 17 at 3. As the Court has ultimately granted the Defendants' motions to dismiss the complaint in its entirety, and as the Plaintiff concedes that the contents of the amended complaint would have no bearing on the outcome of those motions, the Plaintiff has failed to demonstrate that justice requires the Court to grant his motion to amend. Accordingly, Plaintiff's motion to amend is **denied.**

**CONCLUSION**

---

[1] As the Court grants the Defendants' motions to dismiss on account of judicial immunity, the *Rooker-Feldman* Doctrine, and claim preclusion, the Court does not assess the merits of the Defendants' arguments for dismissal under the *Younger* Doctrine.

For the foregoing reasons, Defendants' Motions to Dismiss (ECF 12, ECF 15) are **granted,** Plaintiff's Motion to Amend (ECF 17) is **denied,** and Plaintiff's Complaint is **dismissed.** Judge Durkin's Motion to Dismiss is granted on the basis of judicial immunity. The Town of Pawlet's 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction under *Rooker-Feldman* is **granted** as to the first three causes of action against the Town, but **denied** as to the fourth cause of action. Even if Plaintiff's first three causes of action against the Town were not jurisdictionally barred under *Rooker-Feldman*, the doctrine of claim preclusion independently bars Plaintiff's entire action against the Town. Accordingly, the Town's 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief may be granted is **granted** on the basis of claim preclusion as to all four causes of action.

DATED at Burlington, in the District of Vermont, this 7th day of August, 2023.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge